## The State *vs.* Laura Main.

The statute, (Rev. Stat., tit. 6, § 89,) which provides that justices of the peace may require sureties of the peace and good behavior from any person who shall be guilty of keeping or frequenting houses reputed to be houses of bawdry, and on failure to find such sureties may commit such person to prison, is not unconstitutional or invalid.

The question whether a statute upon which a prosecution is founded is void or not, can be raised after verdict only by a motion in arrest or by a writ of error; it can not be made by a motion for a new trial.

Under this statute a person may be convicted who keeps but one such house, although the statute uses the plural number.

Where a prosecution for the keeping of the same house by the accused at a former time had previously been brought, and on payment of the cost by the accused had been discontinued by the attorney for the state, it was held that this constituted no objection to evidence in a later prosecution as to the reputation of the house at the time of and prior to the former prosecution.

A discontinuance of a prosecution by a prosecuting officer, upon whatever terms it may have been done, leaves the offense in the same position as before the prosecution was instituted.

State *v.* Main.

It is not necessary under this statute to prove that a house reputed to be a house of prostitution, is in fact such.

Where the complaint alleged that a certain *house,* reputed to be a house of prostitution, was kept by the accused, and the proof was that the accused *kept but part of the house,* it was held that there was no variance.

A judge has a right at his discretion to regulate the order in which evidence shall be received and the trial conducted.

GRANDJUROR'S complaint, brought to a justice of the peace, and appealed by the accused to the superior court; tried in the superior court before *Carpenter, J.* The jury found the accused guilty, and she moved for a new trial for errors in the rulings and charge of the court. The complaint charged that the accused, " at New Haven, on the 1st day of January, 1862, and on divers other days between that day and the date of the complaint, did unlawfully keep and maintain a certain house situated in Union street in said town, and known as No. 87 in said street, which said house then and there was, and ever since has been and is, reputed to be a house of bawdry and ill fame," and prayed that the accused be ordered to find sureties of the peace and good behavior. The statute (Rev. Stat., tit. 6, § 89,) provides that " every justice of the peace may, on the complaint of any informing officer, require sureties of the peace and good behavior from any person who shall be guilty of frequenting, keeping or maintaining houses reputed to be houses of bawdry and ill fame," with a right of appeal to the superior court from the order. The exceptions taken to the rulings and charge of the court are sufficiently stated in the opinion.

*Doolittle,* in support of the motion.

*Foster,* state attorney, with whom was *Johnson,* contra.

SANFORD, J. We think the positions assumed by the counsel for the accused are all of them untenable.

1. It is claimed that the statute upon which the prosecution is founded is unconstitutional and void. In reply to this it might be sufficient to say, that if the statute is void for any

cause, and if, as the counsel contends, it is no offense at common law to keep and maintain a house *reputed* to be a house of bawdry and ill fame, he should have moved in arrest of judgment, and may bring a writ of error, but a motion for a new trial is not his remedy. *Minor* v. *Mead*, 3 Conn., 289 ; *Beers* v. *Broome*, 4 id., 247.

But the statute is a valid one. The particular provision of the constitution between which and the statute the repugnancy is supposed to exist has not been pointed out, and we are unable any where to discover such repugnancy. The statute does not, as the counsel assumes, require sureties of the peace and good behavior from persons who merely live in houses reputed to be houses of ill fame, but from those who are guilty of *frequenting, keeping* or *maintaining* them. To *keep and maintain* implies much more than to live in such a house, as to keep a hotel implies more than to live in one. The controlling head of the hotel keeps it, while the individuals who take their meals and lodge in such hotel and have no other domicil, live therein. So the controlling head of a house of ill fame, or of a house reputed to be a house of ill fame, *keeps* such house. The 87th section of the statute provides for the punishment of persons who reside in houses of ill fame for the purposes of prostitution or lewdness. The section under consideration operates upon persons who frequent, keep or maintain houses reputed to be houses of prostitution. Houses of prostitution are public nuisances because they draw together lewd and debauched persons, and thus endanger the public peace, and because of their tendency to corrupt the manners of both sexes. 1 Russell on Crimes, 299 ; 3 Burn's Justice, *Nuisance, Lewdness.* So houses *reputed to be* houses of prostitution have, by reason of such reputation, the same tendency to draw together dissolute and debauched persons, thus endangering the public peace, while virtuous and reputable persons avoid them.

2. It is contended that the superior court erred in charging the jury that the statute might be violated by the keeping of *one* house. We think the charge in this respect was right. The statute indeed speaks of *houses,* in the plural number. Its

language is, " Every justice of the peace may require sureties of the peace and good behavior from any person who shall be guilty of frequenting, keeping or maintaining houses reputed to be houses of bawdry and ill fame," &c. ; but the intention of the legislature to subject to the operation of the statute every person guilty of keeping one such house is too obvious to admit of doubt, and the construction contended for would defeat the manifest object and purpose of the enactment. It is indeed a penal statute. Its operation is not to be extended by construction to cases which are not clearly within the plain and obvious meaning of its framers. But " no rule of construction requires us to exclude the application of common sense to the terms made use of in the act, in order to avoid an absurdity which the legislature ought not to be presumed to have intended." Parker, C. J., in *Commonwealth* v. *Loring*, 8 Pick., 374. " Even penal laws should not be construed so strictly as to defeat the obvious intention of the legislature." Washington, J., in *American Fur Co.* v. *U. States*, 2 Peters, 367. A statute of Henry 8th, enacted that no person should buy or sell any pretenced rights or titles in or to any lands, &c., upon pain of forfeiting the whole value of the property, and " Hales, J., was of opinion that a pretenced right in the singular number was within the penalty of the statute, for, as he said, the plural number contains within itself the singular number and more." So where the statute 1 Henry 5th, ch. 3, recited that " whereas some people do of late use to forge divers false deeds and muniments, &c., it was decided that " if a man forge one false deed he shall be punished by the statute, as it is held in many books." *Partridge* v. *Strange*, 1 Plow., 85 ; Co. Lit., 369 *a*. The statute, 2 Geo. 2, ch. 25, § 3, enacted that it should be felony to steal any " bank notes," and it was adjudged a felony to steal but one. *Hassel's case*, Leach, 1 ; 1 Bla. Com., 88, note.

3. Evidence of the reputation of the house prior to the discontinuance of the first prosecution was properly received. In the case of *Cadwell* v. *The State*, 17 Conn., 467, it was held that evidence of the reputation of the house prior to the commission of the offense as charged in the information, and

even prior to the enactment of the statute on which that prosecution was founded, was admissible to prove its reputation at the time of the offense committed, because, as remarked by Judge Storrs, " evidence of the reputation of the house previous to a particular time fairly conduced to show its reputation afterwards." That was a prosecution under the 87th section of the act, but the determination upon this point is directly applicable in the case before us.

It is claimed however that this evidence ought not to have been received, because upon the abandonment of the first prosecution the accused paid to the state's attorney the costs accrued therein. We see no objection to the evidence on that account. The *nolle*, like a nonsuit or a discontinuance in a civil suit, left the matter just where it stood before the commencement of the prosecution. *Commonwealth* v. *Wheeler*, 2 Mass., 172 ; *State* v. *Benham*, 7 Conn., 418. And the payment of the costs had no effect upon the legal operation of the proceeding. Authority to pursue, suspend or discontinue such prosecutions is confided to the state attorney, to be exercised at his discretion, but he has no power to remit any portion of the penalty prescribed by law for the commission of an offense, or by an arrangement with the offender to tie the hands of the government so that the whole measure of the penalty can not be enforced. The law presumes that he will not exercise his power oppressively, and we add that we see no reason to suppose that he has exercised it in this case otherwise than with fairness and propriety.

Lastly. We think that evidence to prove that persons of bad character for chastity had visited the house during the entire period mentioned in the complaint, that is, for a period of more than three quarters of a year, and that on one occasion a woman of bad character for chastity was found there, in a room with a man under such circumstances as justly led to the inference that they had had sexual intercourse, was properly admitted. The accused claimed that she could not be legally convicted without proof that her house not only was reputed to be, but was in fact a house of prostitution. And this evidence went directly to meet and satisfy that claim. And if,

State *v.* Main.

as the accused claimed, such evidence must be produced in order to warrant her conviction, then it was produced at the proper time. Indeed, if that claim was well founded, the ordinary rule and practice of the court required that it should then be introduced as evidence in chief, if introduced at all. We do not however mean to countenance that claim. We think it clear that no such proof was necessary, but the accused has no right to complain of the production and reception of evidence which she herself demanded.

Nor do we intend to countenance the idea that a new trial will of course be granted because evidence has been received in violation of the ordinary rules of practice in regard to the conduct of trials and the time and order in which the evidence shall be introduced. These rules are always subject to be modified in their application to particular cases at the discretion of the judge, and if this court is authorized to revise his action in relation to such a question, it will exercise its authority only in cases where manifest injustice has or may have been occasioned by the determination of the judge. We think this is not such a case.

The claim made at the trial that there was a fatal variance between the allegation in the complaint, that the accused kept a *house*, and the evidence that she kept but *part* of it, was not insisted on in this court, and we think it was unfounded. See *Regina* v. *Pierson*, 2 Ld. Raym., 1197 ; *S. C.* 1 Salk., 382 ; 1 Russell on Crimes, 299.

A new trial should be denied.