## STATE OF CONNECTICUT *v.* BRUCE ELMORE LLOYD

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued June 12—decision released August 4, 1981

*Jason E. Pearl,* with whom was *Alan L. Robertson, Jr.,* for the appellant (defendant).

*Linda K. Lager,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Mary M. Galvin,* assistant state's attorney, for the appellee (state).

PETERS, J. This case arises out of a claim of conflict between the state's right to enter a nolle prosequi in a pending prosecution and the defendant's constitutional right to a speedy trial. The defendant, Bruce Elmore Lloyd, was charged with sexual assault in the second degree in violation of General Statutes § 53a-71, risk of injury to a minor child in violation of General Statutes § 53-21, attempt to promote prostitution in violation of General Statutes §§ 53a-86 (a) (2) and 53a-49, and permitting prostitution in violation of General Statutes § 53a-89. As trial of his case was about to begin, the state entered a nolle prosequi which the trial court accepted. The defendant's appeal contends that he was denied a speedy trial and that the charges against him should have been dismissed rather than being nolled.

There is no dispute about any of the facts in the record. The defendant was arraigned on the charges against him on November 29, 1978. He has never been incarcerated. He made prompt requests for a speedy trial, and his motion for a speedy trial was granted on August 15, 1979. On September 2, 1980, when he was scheduled for trial, he moved for dismissal of the charges, alleging that the delay of more than a year since the granting of his speedy trial motion constituted a violation of his right to a speedy trial. That motion was heard and denied and the case proceeded to trial with the assembly of a jury panel that was then addressed both by the court and by counsel. The next morning, September 3, 1980, before jury selection had begun, the state asked that the prosecution be terminated pursuant to its power to enter a nolle prosequi. Despite the defendant's objection, the nolle prosequi was

entered. The defendant's renewed motion for dismissal on speedy trial grounds was denied at the same time.

The state's right to terminate a prosecution by the entry of a nolle prosequi has its origins in practices recognized at common law. The effect of a nolle prosequi is to end pending proceedings without an acquittal and without placing the defendant in jeopardy. *Bucolo* v. *Adkins,* 424 U.S. 641, 642, 96 S. Ct. 1086, 47 L. Ed. 2d 301 (1976); see *United States* v. *Jorn,* 400 U.S. 470, 479, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971); 4 Wharton, Criminal Procedure (12th Ed. 1976) § 518. Although the entry of a nolle prosequi results in the defendant's release from custody, he can, within thirteen months; General Statutes § 54-142a (c); be tried again upon a new information and a new arrest. *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 5, 273 A.2d 709 (1970), cert. denied, 401 U.S. 938, 91 S. Ct. 931, 28 L. Ed. 2d 218 (1971); *See* v. *Gosselin,* 133 Conn. 158, 161, 48 A.2d 560 (1946). Until the enactment of General Statutes § 54-46 (now § 54-56b) in 1975,[1] and the promulgation of Practice Book § 2137 (now § 726) in 1976, the power to enter a nolle prosequi was discretionary with the state's attorney; neither the approval of the court nor the consent of the defendant was required. *State* v. *Main,* 31 Conn. 572, 576 (1863); *State* v. *Anonymous,* 32 Conn. Sup. 501, 502-503, 337 A.2d 336 (1975); see Kosicki, "The Function of Nolle Prosequi and Motion to Dismiss in Connecticut," 36 Conn. B.J. 159, 161 (1962).

---

[1] See Public Acts 1975, No. 75-376. There have only been minor amendments since 1975. See Public Acts 1976, No. 76-336, § 15 and Public Acts 1976, No. 76-436, §§ 537, 681.

The principles that today govern the entry of a nolle prosequi place some restrictions on the prosecuting attorney's formerly unfettered discretion. Although the decision to initiate a nolle prosequi still rests with the state's attorney, the statute and the rules now permit the defendant to object to a nolle prosequi and to demand either a trial or a dismissal except "upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or been destroyed and that a further investigation is therefore necessary." General Statutes § 54-46[2] (now § 54-56b); and see Practice Book § 726.[3]

In the present case, the defendant made a timely objection to the nolle prosequi. The state thereupon asked the court to accept the entry of the nolle upon its representation that one material witness had died and that the complaining witness had become disabled. The mother of the complaining witness had died in the spring of 1979, prior to the granting of the defendant's motion for a speedy trial on August 15, 1979. The complaining witness was unavailable to testify because, in the medical judg-

---

[2] "[General Statutes (Rev. to 1979)] Sec. 54-46. PROSECUTION ON COMPLAINT OR INFORMATION. RIGHT TO TRIAL ON A NOLLE. For all crimes not punishable by death or imprisonment for life, the prosecution may be by complaint or information. At any stage in such prosecution, no nolle prosequi shall be entered as to any count in such complaint or information if the accused objects to a nolle prosequi and demands either a trial or dismissal, except with respect to prosecutions in which a nolle prosequi is entered upon a representation to the court by the prosecuting official that a material witness has died, disappeared or become disabled or that material evidence has disappeared or been destroyed and that a further investigation is therefore necessary."

[3] The provisions of the Practice Book are functionally identical to those of the statute.

ment of her psychiatrist, participation in a criminal trial and especially the rigors of cross-examination would cause her to revert to a psychotic state. The state's attorney asserted that she had not learned of the disability of the complaining witness until the afternoon of September 2, 1980. Previous inquiry had led the state's chief inspector to conclude that the complaining witness would be available to give testimony when called. After hearing from defense counsel, the trial court announced that it was satisfied that a witness had become disabled within the terms of the statutory exception and therefore allowed a nolle prosequi to be entered.

The first issue that we must resolve is whether the state's representation was a sufficient basis for the trial court's acceptance of the nolle prosequi. The defendant does not dispute the factual content of the state's representation. He argues, however, that the death of the complaining witness' mother was too remote in time to warrant a nolle prosequi a year and a half later, and that the disability of the complaining witness was of too long standing to justify a delay for further investigation, since, as the state's attorney herself acknowledged, the complaining witness "has been suffering from psychotic episodes for almost two years, or not quite, since a short time after the alleged date of this incident in October of 1978." The state's answer to this argument is to deny its premise. The state maintains that the trial court lacked authority to inquire into the significance of the state's representation. According to the state, once a prosecutor makes a representation that, on its face, complies with the exception stated in the statute and the practice book, the court has no choice other than to order the entry of the nolle prosequi on the record.

This case is our first opportunity to determine the effect of the enactment of § 54-46 and Practice Book § 726 upon the power of the state's attorney to enter a nolle prosequi. We find the argument of neither party wholly persuasive. On the one hand, we agree with the state that the trial court need not receive evidence, and thus makes no findings of fact, to determine the accuracy of the state's representations. The trial court had no obligation to decide whether the complaining witness was in fact truly disabled. On the other hand, we agree with the defendant that the court's duty to determine whether the statutory exception has been satisfied is not purely ministerial. We note, for example, that the court carefully limited its acceptance of the nolle to the representation with respect to the disabled witness only; we need not decide, therefore, whether the state would have been entitled to rely upon the death of a witness long before its entry of the nolle. The proper test is whether there has been a manifest abuse of prosecutorial discretion. The court must accept the entry of the nolle prosequi for the record unless it is persuaded that the prosecutor's exercise of discretion is clearly contrary to manifest public interest. See *United States* v. *Cowan*, 524 F.2d 504, 513 (5th Cir. 1975), cert. denied sub nom. *Woodruff* v. *United States*, 425 U.S. 971, 96 S. Ct. 2168, 48 L. Ed. 2d 795 (1976); *United States* v. *Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1974) (both decided under Rule 48 [1], Federal Rules of Criminal Procedure). This test, similar to that governing the review of the exercise of judicial discretion; see *State* v. *Avcollie*, 174 Conn. 100, 110, 384 A.2d 315 (1977); *State* v. *Brown*, 169 Conn. 692, 702, 364 A.2d 186 (1975); takes full account of the high standards and the commitment

to justice to which state's attorneys adhere as officers of the court and representatives of the people of the state of Connecticut.

Applying the test to the facts before us, we find no error in the decision of the trial court. The trial court was well within its province in determining that the state had satisfied the exception allowing a nolle prosequi to enter despite the defendant's objection. Good faith disagreements about what constitutes disability do not demonstrate a manifest abuse of prosecutorial discretion.

The next issue that we must address is what follows from the trial court's acceptance of the nolle prosequi. The state maintains that this action deprived the trial court of any further jurisdiction to hear the case or to make any rulings in its regard, and deprived this court of jurisdiction to hear an appeal at this time. The defendant claims that the court was then obliged to grant his motion to dismiss for lack of a speedy trial. We will consider each of these positions in turn.

We do not agree with the state that the trial court lost jurisdiction, for all purposes, once the nolle prosequi had been entered on the record. Two recent cases illuminate the court's continuing jurisdiction. In *State* v. *Carr*, 172 Conn. 608, 376 A.2d 74 (1977), the issue was the effect of an erroneously accepted guilty plea on dismissal of the original information. We there held, at pp. 610-11, that "[i]n the absence of statutory authority, the court has no power of its own motion to dismiss a criminal prosecution unless there is a fundamental legal defect in the information or indictment (such as want of jurisdiction or form of the information), or a constitutional defect such as denial of the right

to a speedy trial or illegality of arrest." Under *State* v. *Carr*, a court has continued authority, on its own motion without the consent of the prosecutor, to rule on a motion to dismiss premised on the denial of a speedy trial. In *State* v. *Avcollie*, 174 Conn. 100, 384 A.2d 315 (1977), the issue was the effect of the trial court's acquittal of the defendant, and the defendant's discharge from custody, on the state's subsequent motion to take an appeal. There it was the defendant who argued that the action taken had deprived the court of further in personam or subject matter jurisdiction. We there held (p. 108) that the state's motion was timely because the state had expressed its intention to seek permission to appeal immediately upon the setting aside of the jury's guilty verdict. In those circumstances we concluded (p. 109) that the defendant was not entitled to a full discharge until the court had made a final decision as to the appeal, and that jurisdiction was therefore retained until that time. The principles developed in *State* v. *Avcollie* govern this case, even though the roles of the parties are reversed. The defendant's timely, and timely renewed, motions to dismiss required resolution before the pending proceedings could be fully terminated. The trial court had jurisdiction to decide these motions.

The state's alternate argument about jurisdiction addresses the propriety of present review in this court. The state maintains that the issues raised by the entry of the nolle prosequi and the denial of the motion to dismiss are not ripe for appellate review. The state relies on four points: (1) speedy trial claims are not reviewable until a full trial can demonstrate whether the defendant has been prejudiced; (2) the entry of the nolle prosequi deprived

the trial court, and therefore this court, of jurisdiction, so that the appeal was brought from a nullity; (3) there is no final judgment; and (4) the defendant cannot claim aggrievement by the decision of the court or judge, as required by General Statutes § 52-263, because there has been no judicial decision or action. Several of these points have already been resolved adversely to the state. We have decided, supra, that the trial court did have jurisdiction to decide the motions to dismiss and that its acceptance of the entry of the nolle prosequi over the defendant's objection was a judicial action. Still, it is undeniable that there has, as yet, been no final judgment. In a criminal case, there is no final judgment until the imposition of sentence. *State* v. *Grotton,* 180 Conn. 290, 293, 429 A.2d 871 (1980).

In order to decide whether the present appeal is proper, we must determine whether it falls within the exception to the rule of finality allowing immediate appeal of interlocutory rulings which, if erroneous, cannot later be remedied by suppression of evidence or reversal of the conviction after trial. *State* v. *Grotton,* supra, and cases there cited. Although no immediate appeal would ordinarily lie solely from the entry of a nolle prosequi; *Parr* v. *United States,* 351 U.S. 513, 516–17, 76 S. Ct. 912, 100 L. Ed. 1377 (1956); or solely from the denial of a speedy trial claim; *United States* v. *MacDonald,* 435 U.S. 850, 858, 98 S. Ct. 1547, 56 L. Ed. 2d 18 (1978); we reaffirm our earlier ruling that this case is different. The purpose of providing judicial oversight over the entry of a nolle prosequi to which the defendant has timely objected is to protect the defendant from the repeated initiation and termination of charges that, while discharging him from custody, leave him in legal limbo. See *United*

*States* v. *Cox*, 342 F.2d 167, 171 (5th Cir.), cert. denied, 381 U.S. 935, 85 S. Ct. 1767, 14 L. Ed. 2d 700 (1965). The state's postponement of a trial may, under such circumstances, violate the defendant's constitutional right to a speedy trial. *Klopfer* v. *North Carolina,* 386 U.S. 213, 219–22, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). That constitutional right cannot be vindicated by a trial in the future which may never take place. The present case is therefore distinguishable from *United States* v. *MacDonald,* supra, 856, where the defendant sought to delay a trial already scheduled by interposing an appeal of his speedy trial claims. This case is properly here.

The final issue before us then is to decide whether, on the merits, the trial court erred in denying the defendant's motions to dismiss the charges against him for lack of a speedy trial. We conclude that there was no error.

The Supreme Court of the United States and this court have identified four factors which form the matrix of the defendant's constitutional right[4] to speedy adjudication: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *State* v. *Nims,* 180 Conn. 589, 591, 430 A.2d 1306 (1980); *State* v. *McCarthy,* 179 Conn. 1, 5, 425 A.2d 924 (1979); *State* v. *Brown,* 172 Conn. 531, 536, 375 A.2d 1024, cert. denied, 434 U.S. 847, 98 S. Ct. 153, 54 L. Ed. 2d 114 (1977).

---

[4] The guarantee of a speedy trial is found in the sixth amendment of the United States constitution and is applicable to the states through the fourteenth amendment. *Klopfer* v. *North Carolina,* 386 U.S. 213, 223, 87 S. Ct. 988, 18 L. Ed. 2d 1 (1967). The Connecticut constitution, article first § 8, provides a comparable safeguard. *State* v. *McCarthy,* 179 Conn. 1, 5, 425 A.2d 924 (1979).

Application of the balancing test to this case requires us to agree with the trial court's ruling. The defendant concedes that a delay of twenty-two months is not alone sufficient to mandate a finding of unconstitutional delay. The state's explanation, its crowded docket, while not favored, still does not establish the defendant's case. The defendant's diligence in asserting his right has been exemplary, but it too is insufficient to warrant dismissal. As the defendant notes, the linchpin of the speedy trial claim is a showing of prejudice and, as to that, the parties were in disagreement.

The trial court could reasonably have been unpersuaded that there had been a sufficient showing of prejudice in this case. With respect to trial preparation, the court might have found too speculative the defendant's argument that his case would have been strengthened by the former availability of the complainant's mother. The court might also have found her death, which occurred before the filing of the speedy trial motion, too remotely connected to the alleged delay by the prosecutor. As to the complaining witness, who had become disabled, the court might have doubted her earlier reliability, as well as the utility of her testimony to strengthen the defendant's case. The possible impairment of memory of other witnesses, unsupported by direct factual underpinnings, did not provide proof of prejudice. It is inevitably difficult, in advance of trial, to show how delay has impaired the defendant's ability to have a fair and full presentation of his case.

We do not mean to intimate that prejudice is necessarily limited to difficulties in conducting a successful defense after the passage of time. In

*Klopfer* v. *North Carolina,* supra, 221–22, the Supreme Court found prejudice from the indefinite suspension of a prosecution, without regard to its effect on a subsequent trial. The court held (p. 222) that "[t]he pendency of the indictment may subject [the petitioner] to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the 'anxiety and concern accompanying public accusation,' the criminal procedure [permitting the entry of a nolle prosequi] . . . denies the petitioner the right to a speedy trial." In this case, allegations about personal prejudice, of financial burdens through the loss of a business and of the effects of adverse publicity, were presented to the trial court by defense counsel. Although these assertions were rather unspecific, they were not contested by the state's attorney. Nonetheless *Klopfer* v. *North Carolina* is distinguishable, because North Carolina law attached different consequences to the entry of a nolle prosequi than does Connecticut law. In North Carolina, a criminal prosecution that has been nolled may be reinstated at any time, because entry of the nolle prosequi tolls the running of the statute of limitations. *Klopfer* v. *North Carolina,* supra, 214. In contrast with that system, in which the accused is vulnerable for an unlimited period, under our statutes the entry of a nolle has no effect on the running of the statute of limitations; furthermore, reprosecution more than thirteen months after the entry of a nolle becomes difficult because after that time "all police and court records and records of the state's or prosecuting attorney . . . pertaining to such charge shall be erased." General

Statutes § 54-142a (c). Considering the more limited exposure under a Connecticut nolle, the court here, on the record that was before it, was not bound to find the continued risk of reprosecution to be so prejudicial as to require dismissal.

There is no error.

In this opinion the other judges concurred.