STATE OF CONNETICUT *v.* VINCENT L. PINA

SPEZIALE, PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued October 8—decision released November 17, 1981

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Richard Emanuel,* assistant public defender, for the appellant (defendant).

*Ernest J. Diette,* assistant state's attorney, with whom, on the brief, were *Francis M. McDonald, Jr.,* state's attorney, and *Walter H. Scanlon,* assistant state's attorney, for the appellee (state).

PETERS, J. The principal issue in this case is the validity of the trial court's correction of the defendant's sentence. The defendant Vincent Louis Pina was tried to a jury and convicted of the crime of robbery in the first degree in violation of General Statutes § 53a–134. After denial of his motion to have the verdict set aside, the defendant was, on June 30, 1978, sentenced to a term of not less than ten nor more than twenty years. On October 6, 1978, at the request of the state, the defendant was returned to court and, despite his objection, resentenced so that his term of ten to twenty years was to run consecutively to any term the defendant was then already serving. The defendant's appeal puts into question the judgment of conviction and the propriety of the resentence.

The jury reasonably could have found the following facts: On March 3, 1977, the defendant entered

the American Finance Corporation in Ansonia wearing a green hat and carrying a red canvas bag. The defendant drew from his bag a gun with a scratched barrel and ordered Patricia Alves and Scott Dufresne, two employees of the finance company, to give him the money in the office drawers and safe. After placing the money in his bag and threatening his victims, the defendant left the office without firing any shots. Some three weeks later, on March 25, 1977, the defendant, wearing the same hat and carrying the same bag and gun, robbed the Beneficial Finance Company office in Danbury. He was pursued by a police officer, shots were exchanged, and both the defendant and his pursuer were wounded. The defendant was immediately arrested and his gun recovered.[1]

At his trial for the Ansonia robbery, the defendant's counsel stipulated that the hat, bag, and gun taken into custody at Danbury and entered in evidence were the property of the defendant on March 25, 1977. The defendant later testified to his ownership of the hat, bag, and gun and to firing the gun at Danbury. He testified that he originally obtained the gun from the attic of his parents' home where it had been left by his stepfather.

# I

The defendant's first claim of error is that insufficient evidence was presented at trial to permit the jury to conclude beyond a reasonable doubt that the gun used in the Ansonia robbery was capable of

[1] The defendant was convicted of the Danbury robbery and sentenced to a term of from ten to twenty years. At the time of his trial for the Ansonia robbery he was appealing his Danbury conviction.

firing. Without sufficient evidence of that capacity, the defendant argues, the state has not proved a necessary element of robbery in the first degree as defined by General Statutes §§ 53a-134 (a) (2) and 53a-3 (6),[2] namely use of "a deadly weapon."

The state's proof of this element at trial relied on two sources. The state presented evidence concerning the firing capacity of the gun used at Danbury, and then offered testimony to link the Danbury gun to the Ansonia robbery. That the Danbury gun belonged to the defendant and was capable of being fired was established by stipulation as well as by testimony. At the trial, it was not disputed that the Danbury gun was in fact fired by the

[2] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (1) Causes serious physical injury to any person who is not a participant in the crime; or (2) is armed with a deadly weapon; or (3) uses or threatens the use of a dangerous instrument; or (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

General Statutes § 53a-3 (6) defines a deadly weapon as "any weapon, whether loaded or unloaded, from which a shot may be discharged . . . ."

Although the information charged the defendant with the commission of "robbery in the first degree in violation of § 53a–134 of the General Statutes," the state concedes that its bill of particulars specifying that the defendant or another participant in the crime had been "armed with a deadly weapon" effectively requires the state to prove a violation of § 53a-134 (a) (2). It is undisputed that the state therefore had the burden of proving that the gun was operable. *State* v. *Rose,* 169 Conn. 683, 687, 363 A.2d 1077 (1975).

defendant during the Danbury robbery. After introduction of the Danbury gun into evidence, the state linked the Danbury gun to the Ansonia robbery through the testimony of two witnesses, Patricia Alves and Scott Dufresne. These witnesses testified that the gun entered into evidence was the gun they observed in the defendant's hand at the time of the Ansonia robbery. Although the witnesses admitted to knowing little about guns, they based their identification of the gun in question on its size, color, and scratched condition. The defendant does not on this appeal contest the admissibility of this evidence, nor does he point to any other evidence of the use of a different gun at Ansonia. Viewing the evidence in its totality, we cannot say that the jury could not reasonably have concluded by inference that the gun used to perpetrate the Ansonia robbery was one from which a shot may be discharged as required by statute. The first claim of error is therefore not sustained.

## II

The defendant's second claim of error is that the trial court violated his rights against double jeopardy by altering his sentence in a second hearing conducted in a new term of court after a mittimus had issued and the defendant had commenced serving the original sentence.

The facts are not disputed. On June 30, 1978, following his conviction for robbery in the first degree, the defendant was sentenced by the trial court to a term of not less than ten nor more than twenty years; subsequently a mittimus was issued. No mention was made of whether that sentence was to be served concurrently with or consecutively to the

defendant's prior sentence for the Danbury robbery. On October 6, 1978, the defendant, at that time imprisoned in the state correctional facility at Somers, was, at the request of the state, returned to court. In the presence of the defendant and his counsel, the trial court stated that the sentence imposed in June was to run consecutively to the undischarged term imposed previously. The defendant's counsel took immediate exception to this procedure.

It is clear that the June 30 sentence violated General Statutes § 53a-37, which states, inter alia, that when a person subject to an undischarged prison term is sentenced "[t]he court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed."[3] The defendant argues that, without the required indication by the court, the common-law rule of *Redway* v. *Walker*, 132 Conn. 300, 43 A.2d 748 (1945), prevails; that rule provides that "in the absence of statute, where a per-

[3] "[General Statutes] Sec. 53a-37. MULTIPLE SENTENCES: CONCURRENT OR CONSECUTIVE, MINIMUM TERM. When multiple sentences of imprisonment are imposed on a person at the same time, or when a person who is subject to any undischarged term of imprisonment imposed at a previous time by a court of this state is sentenced to an additional term of imprisonment, the sentence or sentences imposed by the court shall run either concurrently or consecutively with respect to each other and to the undischarged term or terms in such manner as the court directs at the time of sentence. The court shall state whether the respective maxima and minima shall run concurrently or consecutively with respect to each other, and shall state in conclusion the effective sentence imposed. When a person is sentenced for two or more counts each constituting a separate offense, the court may order that the term of imprisonment for the second and subsequent counts be for a fixed number of years each. The court in such cases shall not set any minimum term of imprisonment except under the first count, and the fixed number of years imposed for the second and subsequent counts shall be added to the maximum term imposed by the court on the first count."

son has received two or more separate sentences to imprisonment in the same penal institution and the judgments contain no provision that they shall run consecutively, they will be held to run concurrently." *Redway* v. *Walker,* supra, 303. Thus, in the defendant's view, a subsequent statement by the court that the new sentence be served consecutively would increase the defendant's punishment for the same offense in violation of his rights against double jeopardy. *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).[4]

The defendant's argument, however, fails to take into account an established exception to the traditional double jeopardy rule, that an illegal sentence may be corrected by the court imposing it, under specified conditions, even if the defendant receives an increased punishment and has already commenced serving the original term of imprisonment. *Bozza* v. *United States,* 330 U.S. 160, 166–67, 67 S. Ct. 645, 91 L. Ed. 2d 818 (1947); *United States* v. *Allen,* 588 F.2d 183, 185 (5th Cir. 1979); *Breest* v. *Helgemoe,* 579 F.2d 95, 99 (1st Cir. 1978); *Llerena* v. *United States,* 508 F.2d 78, 80–81 (5th Cir. 1975). This exception is now embodied in Rule 35 of the Federal Rules of Criminal Procedure, which states that "[t]he court may correct an illegal sentence at

---

[4] Under *Benton* v. *Maryland,* 395 U.S. 784, 795–96, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969), and *North Carolina* v. *Pearce,* 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), the rule against double jeopardy contained in the fifth amendment to the United States constitution is by virtue of the fourteenth amendment made applicable to the states. In addition, although the Connecticut constitution contains no explicit provision against double jeopardy, our cases have recognized a common-law constitutional principle to the same effect. *State* v. *Langley,* 156 Conn. 598, 600–601, 244 A.2d 366 (1968); *Kohlfuss* v. *Warden,* 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962).

any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." [5]

This federal rule survives two recent United States Supreme Court cases because neither calls into question a trial court's authority to correct an illegal sentence. In *United States* v. *DiFrancesco,* 449 U.S. 117, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980), the court held that a federal statute permitting the United States to appeal the sentence imposed upon a "dangerous special offender" did not violate the double jeopardy clause of the fifth amendment because sentences are not to be accorded the same constitutional finality as acquittals. *United States* v. *DiFrancesco,* supra, 134. The court specifically approved *Bozza* v. *United States,* supra, in which a trial court corrected an illegal sentence, and cited it for the proposition that "the Double Jeopardy Clause does not require that a sentence be given a degree of finality that prevents its later increase." *United States* v. *DiFrancesco,* supra, 137. In its second decision, *Bullington* v. *Missouri,* 451 U.S.

---

[5] Rule 35 of the Federal Rules of Criminal Procedure in its entirety reads:

"RULE 35. CORRECTION OR REDUCTION OF SENTENCE.

(a) CORRECTION OF SENTENCE.—The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

(b) REDUCTION OF SENTENCE.—The court may reduce a sentence within 120 days after the sentence is imposed, or within 120 days after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within 120 days after entry of any order or judgment of the Supreme Court denying review of, or having the effect of upholding, a judgment of conviction. The court may also reduce a sentence upon revocation of probation as provided by law. Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision."

430, 101 S. Ct. 1852, 68 L. Ed. 2d 270 (1981), the court applied double jeopardy principles to a Missouri capital sentencing procedure and held that a defendant sentenced by a jury to life imprisonment could not on retrial be sentenced to the death penalty. *Bullington* v. *Missouri,* supra, 445–46. The court specifically relied on the resemblance of the Missouri sentencing procedure to a trial on the question of guilt, supra, 446, and nowhere indicated that other methods of altering or correcting sentences are similarly vulnerable on double jeopardy grounds.

Connecticut has adopted a rule analogous to the federal rule. According to Practice Book § 935, "[t]he judicial authority who sentenced the defendant may, within ninety days, correct an illegal sentence or other illegal disposition, or he may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."[6] A time limitation that restricts a sentencing court's power to correct an illegal disposition must be read as a deliberate effort to balance the state's interest in legal sentences against a defendant's interest in

---

[6] Practice Book § 935 was adopted June 7, 1976 and took effect October 1, 1976. According to an earlier draft of the rule, it was based on the first sentence of Rule 35 of the Federal Rules of Criminal Procedure as amended to December 1, 1975 and Rules 631 and 632 of the Uniform Rules of Criminal Procedure (1974). Proposed Rules of Criminal Procedure, Final Draft, January 1976, p. 87. The 1975 version of Rule 35 was identical to the present version quoted above. Rules 631 and 632 of the Uniform Rules read as follows:

"Rule 631: The court may correct an illegal sentence or other disposition at any time.

"Rule 632: The court may correct a sentence imposed, or other disposition made, in an illegal manner, within [four months] after (1) the sentence is imposed or other disposition is made or (2) remand from an appellate court."

a final, immutable term of punishment that may be mitigated but not increased. Cf. *State* v. *Lloyd*, 185 Conn. 199, 209–11, 440 A.2d 867 (1981).

The defendant's original sentence was imposed on June 30, 1978, and the designation of that sentence as consecutive rather than concurrent was added on October 6, 1978, ninety-eight days later.[7] This court has held that a trial court's failure to follow the mandatory provisions of a statute prescribing trial procedures is plain error. *State* v. *Burke*, 182 Conn. 330, 331–32, 438 A.2d 93 (1980). The failure to follow a procedural rule is similarly erroneous. See *LaReau* v. *Reincke*, 158 Conn. 486, 492–93, 264 A.2d 576 (1969). After the passage of ninety days, the trial court lacked the authority to repair its omission from the defendant's original sentence. In the absence of a timely designation of the defendant's sentence as concurrent with or consecutive to his prior undischarged term of imprisonment, the common-law rule prevails, and the sentence will be treated as concurrent. *Redway* v. *Walker,* supra. Although a defendant is not entitled to absolute certainty in all phases of the criminal process; *State* v. *Lloyd,* supra; and the sentencing court may for some finite period of time correct its errors, Practice Book § 935 draws the boundary line beyond which a defendant's expectations of finality may not be disregarded. See *United States* v. *DiFrancesco,* 449 U.S. 117, 137, 101 S. Ct. 426, 66 L. Ed. 2d 328 (1980).

Our ruling today does not conflict with this court's earlier decisions on sentencing procedures.

---

[7] The record does not indicate the date when the state requested correction of the defendant's sentence, perhaps because the defendant did not specifically raise an objection based upon Practice Book § 935 in the trial court.

None of our prior cases has ever permitted the state to wield unlimited power in revising prison sentences. See *State* v. *Heyward,* 152 Conn. 426, 429–30, 207 A.2d 730 (1965) (increase in sentence may not be imposed when defendant has completed original maximum sentence). The situation is different when a defendant chooses to appeal his conviction or seeks review of his sentence by the sentence review division of the Superior Court. There we have said that "[t]he jeopardy, so far as the sentence is concerned, is a single, continuing one, and any change in the sentence results from the sentenced person's own voluntary act." *Kohlfuss* v. *Warden,* 149 Conn. 692, 697–98, 183 A.2d 626 (1962). When, on the other hand, the state acts to modify or correct an illegal sentence or one imposed in an illegal manner, it is confined by the express terms of § 935.

There is error in the judgment of October 6, 1978, revising the original sentence imposed upon the defendant. That judgment is set aside and the case is remanded to the trial court with direction to vacate its order that the sentence should be consecutive.

In this opinion the other judges concurred.