[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case the defendant appealed his conviction as a youthful offender. The Appellate Court reversed and remanded for a new trial. In re Jesus C. 21 Conn. App. 645 (1990). The decision was released on May 4, 1990.
On May 21, 1990 the Appellate Unit of the Chief State's Attorney's office filed a motion for extension of time within CT Page 1851 which to file a petition for certification to the Supreme Court. At a hearing in the trial court on May 25, 1990 the trial prosecutor noted the Appellate Court decision was released more than twenty days earlier and moved to nolle the case and indicated he would not oppose a dismissal. The court at defense counsel's request dismissed the case.
On May 25, 1990 a petition for certification was submitted to the Supreme Court according to the briefs of both sides to this matter. No copy of the petition was mailed to the clerk's office of the trial court. On May 29, 1990 the Supreme Court clerk's office granted an extension of time within which to file the petition until May 25, 1990; defense counsel filed a statement in opposition to the petition on June 4, 1990. On June 8, 1990 appellate counsel for the state filed its motion to vacate the dismissal which is the subject of this memorandum of decision.
Under Prac. Bk. 4128 any proceedings to carry out or enforce the judgment in the trial court are stayed until a party losing the appeal in the Appellate Court has a chance to file a certification petition to the Supreme Court. If the petition is filed there is a stay until the Supreme Court acts on it.
Several issues have been raised by the parties relative to whether the court should grant the state's motion to vacate the dismissal. First they address the issue as to whether the state waived any Prac. Bk. 4128 stay it may have had. The defendant contends that by its actions the state waived any stay and the court had jurisdiction to dismiss this matter.
Secondly, the defendant contends there was in fact no stay in effect at the time of the dismissal; the state disputes this. Of course, if no stay was in place the trial court obviously had jurisdiction to dismiss the case.
Finally, the state argues that . . . "even if the assumption is made that the stay had expired, the dismissal may be vacated and the judgment re-opened because the trial court's actions were founded on the mistaken view that the state did not intend to file a petition for certification in the Supreme Court . . . a judgment improvidently granted under a mistake does not constitute an order of the court and may be treated as a nullity." State's Response to Defendant's Memorandum, p. 12.
In this case the Appellate Court issued its decision on May 4, 1990. The court concluded:
 "There is error; the judgment of conviction is set aside and the case is remanded for a new trial." CT Page 1852
The effect of this decision was to transfer jurisdiction back to the trial court. The state of course had the right to appeal to the Supreme Court. It claims that at the time the trial court acted to dismiss this matter on May 25, 1990 a Prac. Bk. 4128 stay was in effect and the trial court had no jurisdiction to act as it did in dismissing this matter.
Section 4128 of the Practice Book reads in pertinent part as follows:
 "In any action, proceedings to enforce or carry out the judgment shall be stayed until the time to file the petition has expired; if a petition by a party or request by the appellate panel for certification is filed, the proceedings shall be stayed until the supreme court acts on the petition, and if the petition is granted until the final determination of the cause; . . ."
The section goes on to say that an appellate court judge may terminate a stay prior to the supreme court's action on the petition if the judge concludes "that the certification proceeding have been taken only for delay or that the due administration of justice so requires."
The defendant contends that but for the existence of any stay (which it does not concede) the trial court would have had jurisdiction to dismiss this case. He further contends that the state may waive the stay, it did so here, and by doing so jurisdiction reverted to the trial court thereby authorizing the action that it took in dismissing the matter.
What is the purpose of a stay? A broad question deserves a broad answer and a very general authority provides this view:
 "The general rule is that the purpose of a supersedeas or a stay is to suspend or stay any proceedings in the trial court to preserve the status quo pending the determination of the appeal or proceeding in error, and to preserve to appellant the fruits of a meritorious appeal where they might otherwise be lost to him." Vol. 4A, C.J.S., 662, p. 494. (See numerous cases cited therein)
This view is echoed in Preisner v. Aetna Casualty Surety Co.203 Conn. 407 where the court says:
 "The stay does not vacate the judgment obtained by the successful litigant (here the defendant). It CT Page 1853 merely denies that party the immediate fruits of his or her victory . . . ; in order to protect the full and unhampered exercise of the right of appellate review (here by the state) 203 Conn. at p. 414.
A Prac. Bk. stay operates solely for the benefit of the losing party in the Appellate Court) here the state. Nothing in the language of the section refutes that common sense conclusion. The state just as any other party in its situation had no obligation to bring an appeal to the Supreme Court. That being the case it is difficult to understand why under our rules of practice the state could not have waived any Prac. Bk. 4128 stay that may have existed. If the stay could have been waived and it is established that it was, then jurisdiction could only revert to the trial court.
This is not a case where the Supreme Court on its own motion somehow decided to review this case because of the importance of the issues it raised or the appellate panel for the same reason wished to certify the case for review in the Supreme Court (Prac. Bk. 4126). Arguably in such situations rules of practice could be conceived that would prevent a party from waiving a stay that otherwise accrued to its advantage.
The argument that this view of the matter conflicts with the language in Prac. Bk. 4128 indicating that only an Appellate Court judge can terminate a stay really misses the mark by assuming the conclusion it desires to reach. An Appellate Court judge can terminate the stay if the judge finds the certification proceedings were brought for delay or if justice so requires — an act that could only prejudice the party who contemplated bringing or did commence the certification proceedings. Section 4128, however, says nothing about the right of the very same party to itself take an action which would terminate the stay — a stay, which it must be repeated, operates only for that party's benefit.
The trial court did not usurp the power given to an Appellate Court judge in Prac. Bk. 4128. This is not a case where the trial court interferred with appellate court jurisdiction by acting sua sponte or at the request of the party prevailing on the appeal to somehow limit or harm the appellate rights of the losing party. cf. Hartford National Bank v. Tucker, 181 Conn. 296,298 (1980). Here the state, by offering to enter a nolle and explicitly stating it would not object to a motion to dismiss, waived the stay.
There is nothing in the practice book to indicate a party who has lost in the Appellate Court and has the protection of a stay for commencing certification proceedings to the Supreme Court CT Page 1854 may not waive that stay. It is difficult to understand the reasoning on which that position is based. Does the Supreme Court have some supra jurisdictional interest or power to prevent a party from terminating the appellate process by settlement or simple withdrawal of the action? The answer would be no in any adversary system this court is familiar with.
Furthermore this position would appear to be at odds with Section 4038 and 4101 of the Practice Book.
 Prac. Bk. 4038 "A withdrawal of an appeal or writ of error shall be filed in triplicate with the chief clerk of the Supreme Court, who shall send a copy to the trial judge and the clerk of the trial court.
 Prior to oral argument, an appeal or writ of error may be withdrawn as of right; thereafter it may be withdrawn only on a motion to the Supreme Court.
 Unless an appeal or writ of error is withdrawn on the consent of the appellee without costs, costs shall be taxed as if the court had found no error."
Section 4101 provides that if a case is scheduled for oral argument and the case . ." is settled for any reason or for any reason is withdrawn, appellant's counsel must notify the chief clerk promptly. Failure to do so can result in discipline, Section 4184. Thus a party can withdraw his appeal as of right; filing of withdrawal papers is merely a notice requirement, it does not prevent the party from terminating jurisdiction in the appellate forum. Section 4101 refers explicitly to the power of a party to "settle" a case and the language of that section does not infer that parties cannot settle the case without leave of the court — the only sanction contemplated is discipline for the party who does not inform the clerk of any settlement or withdrawal of the action. One way in which a criminal case is "settled" is by the state's agreeing to nolle the case; the place to do that would appear to be the trial court.
The state argues that the Supreme Court was the proper forum for terminating a stay under Prac. Bk. 4038. If the nolle the state sought to enter in the trial court was a "settlement" it was only "cognizable if the state filed a withdrawal of appeal in the Supreme Court. But it is open to serious question whether any strictures the state seeks to read into Prac. Bk. 4038 regarding the filing of withdrawal papers in the Supreme Court apply to the situation now before the court.
Section 4038 says that "Prior to oral argument an appeal or CT Page 1855 writ of error may be withdrawn as of right . . . (emphasis added).
Section 4138 says in pertinent part "whenever certification is granted by the Supreme Court on petition by a party on petition by a party or request by the appellate panel, the cause shall be deemed pending on appeal in the Supreme Court. . . . (emphasis added). In this case at the most a Prac. Bk. 4128 stay was in effect, the Supreme Court had not granted certification so the matter was not "an appeal" in procedural terms. Thus even if there is merit to the state's position that the withdrawal of an appeal as of right and thus the settlement of a case (here by a nolle) is "only cognizable if the state had filed a withdrawal of appeal in the Supreme Court," this would not apply to a case not yet certified for appeal but just awaiting completion of the certification process. And it makes no sense to say that during this period of hiatus a party can't withdraw or settle a case when he can do so of "right" after the Supreme Court has made the decision to accept the case on appeal.
Several cases hold that a party in whose favor a stay operates may acquiesce in a judgment or settle a case and thereby waive any stay, Yontef v. Yontef, 185 Conn. 275 (1981); Waterbury Hospital v. Conn. Health Care Associates, 186 Conn. 247 (1982); cf. Nader v. Altermartt, 166 Conn. 43 (1974); also, see Conn. Water Co. v. Metropolitan District Commission, 201 Conn. 592 (1986). First the state argues these cases concern direct appeal from the trial court to the Supreme Court not the situation here of the period following a decision in the Appellate Court. Secondly, the state again raises the argument that "during the period for an appeal from Appellate Court decisions to the Supreme Court, a stay may only be terminated by means of a motion to the presiding judge of the appellate panel." (page 3 of state's brief, footnote 1). This court has previously dealt with this argument. Suffice it to say that the unquestioned authority of the appellate court to entertain such a motion and the complete lack of authority of this court to similarly act or, interfere with said power has nothing at all to do with the right of a party in whose favor any stay operates to terminate the stay by settlement or withdrawal. The fact that the previously mentioned cases do not deal with "the period following a decision of the appellate court" is thus analytically irrelevant to the reasoning of those cases which support the view that a party has a right to settle or withdraw a case and thus waive a stay operating to its advantage.
This case is unfortunate. It is clear to the court that the nolle was offered by mistake and that mistake led the court to grant a dismissal. The trial prosecutor is a diligent and hard-working person who received notice of the state appellate unit's intention to persue the matter on appeal to the Supreme Court. He cannot be faulted in any way for the position in which the CT Page 1856 state finds itself. It is also unfortunate that it may be that the state is precluded from pursuing an appeal to the Supreme Court on issues which are important to it. However, we live in an adversary system and very often for both sides mistakes lead to unintended and final results. The court does feel that the issue of mistake can and should not color any appraisal made of a strictly jurisdictional question.
The question now before the court can be approached from another point of view. There is no doubt that the trial prosecutor who offered the nolle in this case as an assistant state's attorney had the requisite authority to nolle this case. The nolle of this case is the controlling event here not the entry of a dismissal by the court.
The entry of a nolle terminates the prosecution and once the state decides to take this action the court, as will be discussed, has only a limited and special jurisdiction which is qualitatively different from the general jurisdiction that any appellate court has to resolve the case on the merits through the appellate process.
The state's discretionary power to enter a nolle has existed since colonial times. A nolle terminates the prosecution and removes the cause of action from the court. A nolle may be entered by the state without the approval or acquiescence of the court; Connecticut still follows the common law rule as to the prosecution's power to nolle a case. See, State v. Main, 31 Conn. 572, 57 6 (1863); cf. State v. Stanley, 2 Kirby 25 (1787); cf. State v. Lloyd, 185 Conn. 199, 201 (1981); State v. Anonymous,32 Conn. Sup. 501, 502 (1975), see generally Function of Nolle Prosequi and Motion to Dismiss in Connecticut, 36 Conn. Bar J. 159 (1962); Comment, Nolle Proswqui in Connecticut, 4 Conn. L. Rev. 117 (1971); Connecticut Criminal Procedure, Spinelli, pp 621 et seq.; cf. United States v. Woody, (DC Mont) 2 F.2d 262 (common law rule as it prevailed in Federal courts prior to adoption of Federal Rules of Criminal Procedure. This power has been qualified in only two respects by our practice book; the nolle must be entered on the record Prac. Bk. 725 and under certain circumstances the defendant can object to a nolle and demand a trial or a dismissal, Prac. Bk. 726. State v. Lloyd, 185 Conn. at p. 202.
Given the practically unfettered discretion of the prosecution to nolle a criminal matter where else could have the state exercised its discretion but in the trial court? It could not have done so in the appellate court, it could not have done so in the supreme court which not having acted on any petition for certification did not even have the case "pending on appeal in the supreme court" Prac. Bk. 4138. The state's suggested limitation on its power to nolle this case can not be logically read into the CT Page 1857 stay of execution provisions of Prac. Bk. 4128 without at least raising the possibility of constitutional problems regarding judicial interference with the prosecution's discretion to nolle criminal matters.
Section 54-56b and Prac. Bk. 726 is as the Talton court said "sui generis" and "was enacted by the legislature in order to ensure finality to a criminal defendant when the state indicates that it is unable to proceed with the prosecution."209 Conn. at pp 140-141. In entering a dismissal in this case the court was exercising a limited jurisdiction by enforcing a legislatively created right — the defendant can "demand" a dismissal after the state offers to nolle the case. The state did so here and stated it would not oppose dismissal; thereafter the court granted the defense motion to dismiss pursuant to Section 54-56b of the General Statutes.
Since the state has complete discretion to enter a nolle, with only the limited restrictions mentioned previously, it might be fruitful to consider what the status of this matter would be if a nolle had been offered, the defendant did not move to dismiss and the nolle was entered into the record. Then what would possibly be before this court or any court appellate or otherwise? The only recourse the state would have would be to initiate a new prosecution, see, State v. Ackerman, 27 Conn. Sup. 209,211, Prac. Bk. 727 which provides that subsequent to a nolle "a new prosecution must be initiated to revive the case against a defendant. Can it be fairly said that this defendant is worse off by having moved for a dismissal since the state can now argue that the trial court in dismissing the case exercised exercised a jurisdiction it did not have? Acceptance of this argument would lead to a rather odd result — the defendant would be gratuitously penalized for claiming a right to finality given by statute. The state's offer of a nolle effectively served as an announcement that it had decided to remove this case from the jurisdiction of the court's of this state. The dismissal was not an interference with the supreme court's jurisdiction, which the prosecution had declared it intended to terminate, but merely an enforcement of the defendant's legislatively created right to finality — a right only activated by — the state's declared intention to nolle the case. The fact that the trial prosecutor mistook the uncommunicated intention or desires of his appellate colleagues is a problem that should be resolved so unfortunate occurrences like this don't repeat themselves. However, it in no way detracts from the power of the trial prosecutor to nolle the case and not object to a dismissal as an agent of the state.
The court concludes that if there was a stay it was waived by the state and the court had jurisdiction to enter a dismissal following the offer of a nolle by the state. CT Page 1858
 II.
Of course if there were no stay in effect at the time the nolle was offered and the dismissal was entered there would be no basis on which to grant the state's motion. Accordingly, both sides address this issue and the court will discuss it. The state in the beginning of its argument incorrectly characterizes the defendant's position by maintaining even the defendant does not "contest" the fact that if a stay were in effect the trial court had no power to grant the dismissal. The defendant rather says any stay was waived by the state thus giving the trial court jurisdiction to act as it did. The court has accepted this position. However, the waiver issue will certainly have to be addressed by any reviewing court, since the court agrees with the state that a stay was in effect at the time of the dismissal a stay whose benefits and operation the state's actions brought to an end.
The court cannot agree with the draconian interpretation the defendant seeks to place on our rules of appellate practice. It is one thing to say, as this court has, that in an adversary system a party must live with the consequences of its mistakes it is quite another thing to say that rules of practice which are ambiguous on an issue must be interpreted in such a way as to gratuitously throw a party out of court and deprive it of its appellate rights. It seems to this court that the presumptions should run the other way.
Under Prac. Bk. 4128 the filing of a petition for certification stays proceedings. The briefs of both parties indicate there is a factual dispute as to exactly when the petition was filed on the day the dismissal entered — that is before or after that pivotal event. The court did not take evidence on this question, neither party requested an evidentiary hearing on this issue. The court does not choose to resolve a factual issue on allegations made in briefs.
There seems to be no question that the state on May 21, 1990 had requested an extension of time pursuant to Prac. Bk. 4132 within which to file its petition for certification. The defendant argues that the motion had not been granted so that the time to file the petition and the stay expired on May 24, 1990 twenty days after the decision's release and one day prior to the dismissal by the trial court. The defendant argues that the stay cannot be extended "merely by filing a request for an extension of time to file the petition." The defendant's policy reason for this position is that if the stay were so extended "the party who seeks to prevent the enforcement of a judgment could thwart the clear import of the rules and the requirements of the efficient CT Page 1859 administration of justice, simply by persisting in filing motions for extension of time." The pertinent language of the rules on this question reads as follows:
 "4128. In any action, proceedings to enforce or carry out the judgment shall be stayed until the time to file the petition has expired;
 "4132. Motions for extensions of time for purposes of filing a petition for certification . . . shall be filed with the chief clerk's office and shall be governed by Sec. 4040."
The language of the rules does not explicitly address the present question. But reading these two sections together, to hold that the filing of a motion for extension does not extend the stay would make Prac. Bk. 4132 a trap for the unwary. For all practical purposes loss of the stay based on this reasoning would turn Prac. Bk. 4132 into a nullity, since any appellate rights sought to be protected under it would in most cases be effectively lost. The point made by the defendant that enforcement of judgments could be thwarted by endless filing of Prac. Bk. 4132 motions is correctly answered by the state — courts on review need not grant the extensions thereby terminating the right to file the certification petition.
The defendant also claims that the provisions of Prac. Bk. 4040 referred to in Prac. Bk. 4132 were not complied with by the state. This court will not presume to adopt the defendant's interpretation of Prac. Bk. 4040 and thereby take upon itself the resolution of a claim that a valid Prac. Bk. 4132 motion was before the Supreme Court. That is a question for the Supreme Court which it apparently has answered by permitting the state to file a petition for certification.
Explicit references in the rules to the need for a party to file a motion to stay really do not support the defendant's position. Prac. Bk. 4049 provides that if a court terminates a stay, the execution of such an order shall be stayed five days and if a motion for review of this action is filed within that time, the order terminating the stay shall itself be stayed pending a decision on the motion for review. A motion for extension of time to file a motion for review of a ruling regarding a stay does not itself automatically stay the execution of an order terminating the stay. This has nothing to do with the language of Prac. Bk. 4128. Prac. Bk. 4049 specifically says a stay terminates five days after the issuance of a notice of an order terminating a stay of execution. Since the whole procedure contemplates a situation where a court has specifically addressed CT Page 1860 the issue of whether a stay of execution shall remain in effect, it is not unreasonable that a motion to review such an order shall not automatically stay the execution beyond the five day period within which a motion to review the matter ought to be filed.
Prac. Bk. 4128 on the other hand says "proceedings to enforce or carry out the judgment shall be stayed until the time to file the petition has expired." This section, which specifically deals with the stay of execution, makes no reference to the twenty day period in Prac. Bk. 4129 for filing the petition for certification. A common sense reading of the rules would suggest that therefore in Prac. Bk. 4128 terms the "time to file the petition" does not expire until the resolution of any motion filed under Prac. Bk. 4132 which explicitly grants parties the right to file motions for extension of time within which to file the petition for certification.
True, as the defendant notes, Section 4050 says the filing of a motion for stay of execution shall operate as a stay until the state supreme court acts on the motion. No similar language appears in Prac. Bk. 4132. It is not surprising that we should have a rule that provides that if a party wants a stay of execution pending a decision by the United States Supreme Court, that party should specifically have to ask for a stay after he has finally lost his case in the appellate process provided by this state. That the stay should continue until the state supreme court has ruled on the motion for the stay is a necessary corollary to this policy if the right to ask for a stay is to have any practical meaning. As the defendant points out no language similar to that of Prac. Bk. 4050 appears in Prac. Bk. 4132 but that is because, reading Prac. Bk. 4128 and 4132 together, the language of the rules presumes a stay will remain in existence until the time for filing the petition for certification has expired — as noted, that doesn't take place until the final resolution of any Prac. Bk. 4132 motion for extension of time.
The court concludes that a stay was in effect but as previously discussed believes the stay was waived by the state.
 III.
The state argues that even if the stay was not in effect or in this court's view the stay was waived by the state, the motion to vacate the dismissal should be granted. The state argues that the "trial court's actions were founded on the mistaken view that the state did not intend to file a petition for certification in the Supreme Court . . . a judgment improvidently granted under a mistake does not constitute an order of the court and may be treated as a nullity." CT Page 1861
Again there is a semantic problem — the difficulties the state now finds itself in are not due to the "court's actions" but to the prosecution's offer of a nolle and explicit statement pursuant thereto that it would not object to a dismissal. Furthermore, whatever the state appellate unit's "intentions" were are irrelevant to the jurisdictional question which is here controlled by the necessary recognition of the trial prosecutor's power to nolle the charges against the defendant.
Turning to the substantive issue before the court the state referred to several cases and the court has examined them.[1] The state of course does not claim that fraud or imposition was practiced upon the trial court. The cases it cites deal generally with the effect of mistake but they have no bearing on the present problem. Lindus v. Northern Insurance Co. of N.Y.,438 P.2d 311 (Ar 12., 1968); People v. Holt, 211 P.2d 917 (1949); In re Rothrock, 92 P.2d 643 (Cal., 1939) all involve situations where an appellate court recognizes its power to recall a case for redetermination of its prior holding where that prior decision may have been made as a result of the mistake of the appellate court. As the Linders court said" "It would be absurd to argue that a court empowered to correct errors in every other court in this state cannot correct its own." If such were the case errors made by the state Supreme Court would be the "only errors for which no relief is available." 38 P.2d at page 313. Where such a mistake has occurred and "the proceedings have in part found their way back to the court below, yet in law they are considered as still pending in the appellate court, and that court may take such steps as may be necessary to make the facts and the law agree. "In re Rothrock, 92 P.2d at pp 636-637. People v. Mutch, 482 P.2d 633
simply decided a defendant is entitled to post conviction relief where he lost on appeal and his conviction became final before a decision by the same appellate court favorable to his position. Campbell v. Kvacke Flanders, 100 S.W. 1028 involved dicta for the not very surprising notion that a party who was party to a decree entered by agreement on the appointment of a receiver to a trust fund, has the power to institute proceedings to re-open the matter in the trial court on the grounds of fraud, mistake or some equitable grounds. First as to the Lindus line of cases, here the mistake was not made by the Supreme Court or the trial court but by the state in not informing the trial prosecutor of its intentions to pursue its appellate remedies in the Supreme Court. As far as the Campbell case is concerned, this is not a civil matter. The whole purpose of the Prac. Bk. 726 procedure and the right to demand a dismissal under Section 54-26b was to ensure finality to a criminal defendant. Our Supreme Court has concluded that . . "the dismissal of a criminal prosecution by the trial court in response to a defendant's for a dismissal pursuant to 54-56b is a per se dismissal with prejudice." State v. Talton, 209 Conn. at page 142. Here CT Page 1862 the state offered a nolle; had the nolle been entered by the court Prac. Bk. 727 would apply. It reads:
 "The entry of a nolle prosequi terminates the prosecution and the defendant shall be released from custody. If subsequently the prosecuting authority decides to proceed against the defendant, a new prosecution must be initiated." (emphasis added).
Viewing the matter from any perspective it must be concluded that this court in fact has no jurisdiction to act on the state', motion because there is nothing before the court. As noted earlier in this opinion it cannot be accepted that the defendant's position is somehow weakened because he moved for a dismissal which the state told the court it did not even oppose. This would lead to the bizarre result, at least for the purposes of this case, that the Prac. Bk. 726 dismissal, which was created to bar any future prosecution, leaves the state in a better position to move the court to vacate its actions than the entry of a nolle would have. At least in the latter case Prac. Bk. 727 makes clear prosecution is terminated by a nolle and only a "new prosecution" will lie against the defendant and that must be true whether the nolle was based on mistake, fraud, or any other imaginable reason.
The court cannot grant the state's motion and it is hereby denied.
Corradino, J.
Footnote