919 P.2d 995

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Gabriel TAPARRA, Defendant–Appellant.**

No. 17276.

Intermediate Court of Appeals of Hawai'i.

June 3, 1996.

Catherine H. Remigio, Deputy Public Defender, on the briefs, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, Judge.

Defendant appeals from a sentence imposed on June 9, 1993 for various traffic offenses following his successful attack on a prior sentence imposed on February 19, 1993 for the same offenses. We modify the sentence imposed on June 9, 1993 and remand

---

1. Hawai'i Revised Statutes (HRS) § 291-4(a) (1985) provided the following:

§ 291-4 Driving under influence of intoxicating liquor. (a) A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

2. HRS § 291-4.5 (1985) stated the following:

[§ 291-4.5] Driving after license suspended or revoked for driving under the influence of intoxicating liquor; penalties. No person whose driver's license has been revoked, sus-

the case to the district court to implement the modified sentence.

## I.

On June 4, 1990, the district court of the First Circuit sentenced Defendant–Appellant Gabriel Taparra (Defendant), *inter alia,* to ten days' imprisonment and a $500 fine for driving under the influence of intoxicating liquor (DUI) in violation of Hawai'i Revised Statutes (HRS) § 291–4(a) (1985),[1] a concurrent three-day sentence of imprisonment and a $250 fine for driving after license suspended or revoked for DUI in violation of HRS § 291–4.5 (1985),[2] and a $1,000 fine for driving without no-fault insurance in violation of HRS § 431:10C–104 (1993). The district court also assessed a "contribution" of $5 to court programs for each of the foregoing offenses and required Defendant to pay the fines by July 3, 1990. The district court set a proof of compliance hearing for September 4, 1990. In his brief, Defendant maintains that he served the ten days' imprisonment imposed, and the State does not dispute this contention.

Defendant indicates that because he failed to appear for a proof of compliance hearing held on July 3, 1990, the district court issued a bench warrant for his arrest and set bail at $1,790. Defendant also contends that on October 14, 1992, he was returned on the bench warrant, released, and ordered to pay the fines by December 22, 1992. Neither the July 3, 1990 nor the October 14, 1992 hearing

pended, or otherwise restricted pursuant to section 286–155 or 291–4 shall operate a motor vehicle upon the highways of this State while such license remains suspended, revoked, or in violation of the restrictions placed on the license. Any person convicted of violating this section shall be sentenced to a term of imprisonment of at least three consecutive days but not more than thirty days, shall be fined not less than $250 but not more than $1,000, and that person's driver's license shall be suspended or revoked for an additional period of one year. The court for good cause may extend imprisonment up to sixty days. The period of suspension or revocation shall commence upon the release of the person from the period of imprisonment imposed pursuant to this section.

is reflected in the record on appeal. The record does indicate that on October 21, 1992, the district court ordered Defendant to pay the fines by December 22, 1992. On December 22, 1992, $750 of Defendant's bail monies was applied to reduce the balance owing on the fines. The district court thereafter ordered Defendant to pay the balance of the fines by February 19, 1993.

On February 19, 1993, Defendant appeared in court *pro se*, requesting that the district court permit him to satisfy the balance owed by community service. Defendant explained that he "tried to get a loan but was refused by the bank." According to Defendant, he worked a "little over" twenty hours per week as a plumber "[o]n call." The district court temporarily passed the case and when the court returned to Defendant's case, Defendant was represented by a deputy public defender. Through his counsel, Defendant again requested community service, asserting that Defendant had "submitted resumes to places on a daily basis, trying to find another job." Defendant maintained that he could "barely" pay his rent and took "side jobs" to earn money for food and to support his family. Furthermore, Defendant related that he encountered difficulty in obtaining "plumbing jobs" because "most all" of the plumbing jobs required a license, which he did not possess. Without the requisite plumbing license, Defendant was not allowed to be a union member and thus could not work on "contract bids."

The district court was not persuaded by Defendant's reasons for failing to pay the fines and indicated that it was "bother[ed]" by Defendant's lack of "effort" to pay the fines. It stated that had Defendant made an effort to tender any payments to reduce the fines, the court would have been "happy to assist" Defendant and grant him community

service. But since the court saw "absolute[ly] nothing from the day those fines were imposed," the court denied Defendant's request for community service and sentenced him to serve ten days' imprisonment "in lieu" of the $500 fine for DUI, thirty days' imprisonment in lieu of the $250 fine for driving with suspended license, and 100 hours of community service in lieu of the $1,000 fine for the no-fault insurance offense. The district court then sentenced Defendant to a total of forty days' imprisonment in lieu of the fines and ordered that he be taken immediately into custody.

HRS § 706–644 (1993) [3] provides that upon a default by a defendant sentenced to pay a "fine or restitution," "the court, upon the motion" of the State or "upon its own motion, may require the defendant to show cause why the defendant's default should not be treated as contumacious[.]" However, the State did not move for and the district court did not issue an order to show cause why Defendant should not be held in contempt for failure to pay his fines in this case. As a result, the provisions of HRS § 706–644 are inapplicable here. Defendant was placed in custody on February 19, 1993 and in his brief, asserts that he was additionally imprisoned for fourteen days from February 19, 1993 to March 5, 1993. The State does not dispute this statement.

## II.

On March 1, 1993, Defendant filed a petition for writ of habeas corpus in the first circuit court, contending that the "imposition of incarceration for failure to pay a debt [wa]s in strict violation of the Hawai'i State Constitution under article I, section 19[.]" On March 4, 1993, the circuit court held a hearing on the petition. The court minutes

---

3. HRS § 706–644 (1993) in relevant part states the following:

§ 706–644 **Consequences of nonpayment; imprisonment for contumacious nonpayment; summary collection.** (1) When a defendant sentenced to pay a fine or restitution defaults in the payment thereof or of any installment, the court, upon the motion of the prosecuting attorney or upon its own motion, may require the defendant to show cause why the defendant's default should not be treated as contu-

macious and may issue a summons or a warrant of arrest for the defendant's appearance. Unless the defendant shows that the defendant's default was not attributable to an intentional refusal to obey the order of the court, or to a failure on the defendant's part to make a good faith effort to obtain the funds required for the payment, the court shall find that the defendant's default was contumacious and may order the defendant committed until the fine, restitution, or a specified part thereof is paid.

indicate that after listening to argument by the parties, the circuit court "instructed counsel to try and reach an agreement[.]"

Upon reconvening the hearing, the minutes state that the deputy public defender "informed the court that the State and defense ha[d] reached an agreement re[gard-ing] granting of the petition and conversion of the [outstanding] fine[s] to 143 hours of community service; terms of the stipulation [were] read into the record." The minutes further reveal that "the court examined the defendant" regarding his "understanding of the stipulation" and that "[t]he court approved the order, instructing [the deputy public defender] to put it in the form of a stipulation with an approved and so ordered signature [line]." According to the minutes, the deputy prosecutor "stated his agreement with the stipulation." The final entry in the minutes states that on March 5, 1993, the order submitted by the deputy public defender had "been returned," and the circuit court had "filed its own order which set[ ] a district court appearance on April 16, 1993 for resentencing."

The circuit court entered its order granting the petition for writ of habeas corpus on March 5, 1993. The order states in pertinent part that "the State having no objection, the petition is hereby granted," "[t]he sentence[s] ... [are] set aside and Defendant is ordered released from custody," and "Defendant is directed to appear in the [d]istrict court ... for the purpose of resentencing."

### III.

On April 16, 1993, Defendant and his counsel appeared before the district court on their understanding that they were "just basically [t]here to enter an order saying ... the $1,040 that was stipulated to as [what Defendant] ow[ed] in the way of fines [would] be converted to 143 hours of community ser-

vice[.]" The prosecutor had no response to Defendant's request. The district court observed that the circuit court had not signed the initial order prepared by defense counsel and requested defense counsel to provide the "history of these documents and the [sic] validity as it relates to the sentencing in these cases." On March 7, 1993, the matter was continued for hearing.

On March 19, 1993, Defendant filed a "Motion to Impose Sentence" (the Motion). Defense counsel appended an affidavit to the Motion in which she stated the following: (1) on March 4, 1993, the circuit court "after hearing argument ... granted the [w]rit of [h]abeas [c]orpus," "took a recess and 'strongly recommended' that the State and [d]efense ... hammer out an agreement with respect to the sentence giving Defendant credit for time served and converting the fine to community service"; (2) an agreement was reached giving "Defendant credit at $5.00 a day for the time Defendant had served and convert[ing] the remainder of the fine[ ] after deducting the credit[ ] to community service [at] $5.00 an hour," thus, resulting "in a fine of $1,040 being converted to 143 hours of community service"; (3) the circuit court "concurred with the agreement and had the sentence read into the record and then explained it to the Defendant"; (4) defense counsel drafted the order including the stipulation; (5) "[o]n March 5, the State signed the order and then the [c]ourt signed the order," but the judge later "scratched his name out and then drafted his own order." According to the affidavit, defense counsel "spoke with [the judge's] clerk who told affiant that the reason the [circuit] court draft[ed] its own order was because [defense counsel] failed to use the phrase 'Defendant is ordered released from custody.'" Finally, the affidavit referred to the court minutes which were attached as an exhibit to the affidavit.[4]

The hearing transcript reveals that the State represented that it and "the defense ha[d] reached a stipulation for the petition to be granted per writ of habeas corpus" and requested that the stipulation be "put on the record." Defense counsel stated that the order would include the stipulation that Defendant's "fine in the amount of $1,040 [would] be converted to 143 hours of

---

4. The transcript of the March 4, 1993 hearing before the circuit court was made a part of the record on appeal but was not available at the time of the district court hearing on June 9, 1993. The March 4, 1993 transcript is consistent with the rendition of the proceedings set forth in the minutes.

At the hearing on the Motion held on June 9, 1993, the deputy prosecutor confirmed that the State was "not opposed to converting the defendant's sentence to community service," and that the State had approved the agreement by stipulation. The deputy prosecutor, however, deferred the matter to the "discretion of the [c]ourt." The district court received defense counsel's affidavit and the exhibits attached to the affidavit into evidence. Defense counsel further noted that Defendant had "already completed 23 hours" of community service "in accordance with what he was told by [the circuit court] judge[.]"

Rejecting Defendant's request, the district court took the position that the order was nothing more than a "referral of the matter back to [it] for resentencing," and that it intended to resentence Defendant. The State then indicated that the "notes" by the deputy prosecutor at the March 4, 1993 habeas corpus hearing stated "that the case [was] to be resentenced in [the] [d]istrict [c]ourt in accordance with [the] stipulation between [the] parties[,] which [was] approved[.]" Despite the State's additional representation, the district court denied the Motion and resentenced Defendant to essentially the same terms as had been originally imposed on June 4, 1990,[5] without giving Defendant credit for the prison time he had already served, the amount in fines he had already paid, or the community service he had already completed.[6] The district court did not state any reasons for its new sentence.

## IV.

■ The district court could not resentence Defendant without giving him credit for that part of the original sentence already satisfied. The double jeopardy clause of the federal constitution enforceable against the states through the Fourteenth Amendment "protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnote omitted). Noting that "[t]he constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it," *id.* at 718, 89 S.Ct. at 2077 (citation and quotation marks omitted), the United States Supreme Court held that the guarantee against double jeopardy "is violated when [imprisonment] already exacted for an offense is not fully 'credited' in imposing sentence upon a new conviction for the same offense." *Id.* The time already served in prison by a defendant must be credited "by subtracting [it] from whatever new sentence is imposed." *Id.* at 719, 89 S.Ct. at 2077. The same rule would be "equally applicable where a fine had been actually paid upon the first conviction." *Id.* at 718 n. 12, 89 S.Ct. at 2077 n. 12. "Any new fine imposed upon reconviction would have to be decreased by the amount previously paid." *Id.*

Defendant here was not resentenced following reconviction but was resentenced for the same offense after the prior sentence had been collaterally overturned. Without receiving credit for imprisonment already served and for the fines already paid, Defendant, on resentencing, would be subjected to invalid "multiple punishments" for the same offense. *See Pearce,* 395 U.S. at 719, 89 S.Ct. at 2077. The same rule applied in *Pearce,* must, in principle, be applied here. For "the constitutional guarantee against multiple punishments for the same offense [in the double jeopardy clause] absolutely requires that punishment already exacted must be fully "credited" in imposing sentence ... for the same offense." *Id.* at 718–19, 89 S.Ct. at 2077 (footnote omitted). It is constitutionally mandated that Defendant be given

community service." The court instructed defense counsel to prepare the order for the court's signature. Defense counsel agreed and the State, for the record, concurred with the stipulation and order.

5. The district court did not assess the $5 contribution to court programs for each of the offenses or the seven points for the DUI and driving after license suspended or revoked for the DUI convictions which were part of the June 4, 1990 sentence. Defendant does not object to these assessments, and they remain in effect under our ultimate disposition of the case.

6. Although community service was not ordered as part of the June 4, 1990 sentence, the district court should have considered Defendant's performance of community service when it resentenced him.

credit for imprisonment he had already served and fines he had already paid upon being resentenced for the same offense.

■ The double jeopardy clause [7] in article I, section 10 of the Hawai'i Constitution affords the same protection to Hawai'i's citizens as the United States Constitution's fifth amendment [8] guarantee that no person "subject for the same offence" shall be "twice put in jeopardy of life or limb." The Hawai'i Supreme Court "has always been mindful of its obligation to 'afford defendants the minimum protection required by federal interpretations of the [f]ourteenth [a]mendment to the Federal Constitution....'" *State v. Hutch*, 75 Haw. 307, 321, 861 P.2d 11, 19 (1993) (quoting *State v. Texeira*, 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967)). "Our state constitutional safeguards 'must at least comport with United States Supreme Court standards.'" *State v. Silva*, 78 Hawai'i 115, 117–18, 890 P.2d 702, 704–05 (App.1995) (quoting *State v. Grahovac*, 52 Haw. 527, 533, 480 P.2d 148, 152 (1971)). Because the text of the double jeopardy clause in the fifth amendment of the United States Constitution is essentially the same as the language of the double jeopardy clause in article I, section 10 of the Hawai'i Constitution, we hold that the prohibition against multiple punishments for the same offense set forth in *Pearce* also inheres in our state constitution. *See* Haw. Const. art. 10, § 1; *see also Silva*, 78 Hawai'i 115, 890 P.2d 702 (holding that because the due process clause in the federal constitution is applicable to the states under the fourteenth amendment, the right is also guaranteed to defendants pursuant to the identical provision in article I, section 5 of the Hawai'i Constitution).

It is undisputed that Defendant had already served twenty-four days in prison, paid $750 of the fines and worked twenty-three hours of community service. Accordingly, "subtracting [time already served] from whatever new sentence [was] imposed," *see Pearce*, 395 U.S. at 719, 89 S.Ct. at 2077, Defendant's credit for imprisonment exceeded the ten-day sentence of June 9, 1993 by fourteen days. Similarly, the "new fine of [$1,750] upon [resentencing] would have to be decreased by [$750], the amount previously paid." *Id.* at 718 n. 12, 89 S.Ct. at 2077 n. 12.

While there does not appear to be any statutory provision for allowing credit for fines paid, HRS § 706–671(2) (1993), in relevant part, provides for "credit for imprisonment under [an] earlier sentence for [the] same crime."

> (2) When a judgment of conviction or a sentence is vacated and a new sentence is thereafter imposed upon the defendant for the same crime, the period of detention and imprisonment theretofore served shall be deducted from the minimum and maximum terms of the new sentence. The officer having custody of the defendant shall furnish a certificate to the court at the time of sentence, showing the period of imprisonment served under the original sentence, and the certificate shall be annexed to the official records of the defendant's new commitment.

HRS § 706–671(2).

Thus, the district court was also statutorily required to give Defendant credit for imprisonment already served to reduce Defendant's new sentence of imprisonment. *See State v. Mason*, 79 Hawai'i 175, 183–84, 900 P.2d 172, 180–81 (App.), *cert. denied*, 79 Hawai'i 341, 902 P.2d 976 (1995); HRS § 706–671(2).

(Emphasis added.)

---

**7.** Article I, section 10, of the Hawai'i Constitution provides:

> No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law, except in cases arising in the armed forces when in actual service in time of war or public danger; *nor shall any person be subject for the same offense to be twice put in jeopardy*[.]

**8.** The United States Constitution, in relevant part, provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; *nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb* [.]

## V.

We think it is evident that there was an agreement reached between the State and Defendant to dispose of the remaining fines under the district court's June 4, 1990 judgment. This agreement was apparently placed on the record in the form of a stipulation and approved by the circuit court.[9] The minutes and the representations of both the State and Defendant support the conclusion that when the circuit court ordered that Defendant be "resentenced," it intended that the resentencing be done in accordance with the stipulation of the parties. Still, we need not reach the question of whether the circuit court had the power to require the district court to resentence Defendant in accordance with the stipulation.

■ Under a plain reading of HRS § 641–16 (1993),[10] an appellate court has the discretion to affirm, reverse, or modify the sentence of a trial court in a criminal case on appeal " 'as in its opinion the facts and law warrant.' " *State v. Toro*, 77 Hawai'i 340, 344, 884 P.2d 403, 407 (App.), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994); *see State v. LeVasseur*, 1 Haw.App. 19, 30, 613 P.2d 1328, *cert. denied*, 449 U.S. 1018, 101 S.Ct. 582, 66 L.Ed.2d 479 (1980), *reh'g denied*, 449 U.S. 1134, 101 S.Ct. 958, 67 L.Ed.2d 122 (1981). We are aware that judicial power under this section should be exercised with caution. *See Territory v. Kunimoto*, 37 Haw. 591, 596 (1947) (the predecessor to HRS § 641–16 stated that "judicial power should be exercised with caution and only upon a manifest showing from the evidence of an abuse of discretion or that the severity of the punishment imposed is a result of prejudice or passion"). On resentencing, the district court failed to take into account the time

Defendant had already served in prison, the amount of fines paid, and the community service he had completed. Consequently, for the reasons previously stated, we believe error was committed "which injuriously affected the substantial rights of [Defendant]." HRS § 641–16.

Because the district court simply reimposed the essential terms of the original sentence, further proceedings in this matter would only consume more time and incur unnecessary expenses for all. Accordingly, a modification of the sentence is warranted on appeal. Under the circumstances, the balance of the fine owing on the June 4, 1990 judgment should be disposed of in accordance with the stipulation of the parties as approved by the circuit court.

Therefore, pursuant to HRS § 641–16, we modify the district court's June 9, 1993 sentence to conform to the June 4, 1990 judgment in all aspects, see note 5, *supra*, and the parties' stipulation for satisfaction of fines, which the circuit court approved. We remand the case to the district court with instructions to implement the June 4, 1990 sentence as adjusted by the parties' stipulation approved by the circuit court and to credit Defendant with prison time already served, fines already paid, and the twenty-three hours of community service already completed by him.

---

U.S. Const. amend. V. (Emphasis added.)

**9.** We do not consider the clerk's statement to defense counsel concerning the reason for the issuance of the court's own order since the statement was not made by the court itself.

**10.** HRS § 641–16 (1993), in pertinent part, sets out the following:

   **§ 641–16 Judgment; no reversal when.** The supreme court, or the intermediate appellate court, as the case may be, may affirm, reverse, or modify the order, judgment, or sentence of the trial court in a criminal matter. It

may enter such order, judgment, or sentence, or may remand the case to the trial court for the entry of the same or for such other or further proceedings, as in its opinion the facts and law warrant. It may correct any error appearing on the record.
   ... Any order, judgment, or sentence entered by the court may be enforced by it or remitted for enforcement by the trial court.
   No order, judgment, or sentence shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the appellant.