******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BISHOP, J., dissenting. Finding that the trial court had jurisdiction to hear the motion to correct an illegal sentence filed by the defendant, Frank McGee, my colleagues in the majority analyze the defendant's claim on the merits and, finding none, reverse the court's dismissal and remand the case to the trial court with direction to deny the motion. Unlike my colleagues, I do not believe that the trial court had jurisdiction to hear this motion, as I view it as no more than a collateral attack on the defendant's conviction.[1] Therefore, I would affirm the dismissal of the motion, albeit not for the reasons stated by the trial court.

This case began with the July 5, 2015 filing of a motion to correct an illegal sentence by the (then) self-represented defendant. In that motion, the defendant claimed that his sentences for two counts of robbery in the second degree were illegal because they constituted two punishments for the commission of one offense. Nowhere in his motion did he make any argument that his sentences, themselves, violated double jeopardy except for his argument that they flowed from convictions that he claimed violated his right not to be convicted twice for one offense.

Also, it is notable that nowhere in his motion or any of the supporting documents that he filed, either personally or through counsel, did the defendant specify the relief he sought except by the caption of his motion to "correct an illegal sentence." After being appointed, pursuant to *State* v. *Casiano*, 282 Conn. 614, 627–28, 922 A.2d 1065 (2007), to review the defendant's petition, counsel filed a report in which she indicated her belief that there was a sound basis to the motion. Counsel's analysis consisted entirely of a discussion of whether the offenses of which the defendant was convicted were, in fact, the same offense for double jeopardy purposes. From her analysis, counsel concluded that the two counts of robbery constituted only one offense and, therefore, the defendant's double jeopardy rights were violated when he was convicted and sentenced on both counts. In reaching this conclusion, counsel asserted no claim that the sentences, themselves, violated double jeopardy apart from the fact that they flowed from flawed convictions. On the basis of her assessment, counsel concluded: "As a result, the court must vacate one of the robbery convictions and sentences."[2]

With respect to the relief the defendant seeks, his brief provides no more illumination than his motion or counsel's sound basis analysis. While the defendant repeats his claim that his double jeopardy rights were violated when he was sentenced for two counts of robbery in the second degree, his entire analysis focuses

on whether his underlying conduct constituted two offenses, as charged and found by the jury, or simply two alternative ways of committing the same offense. In the concluding portion of his brief, the defendant states: "For the same reasons articulated by [the Appellate Court] and the Supreme Court, the defendant's conviction for two counts of robbery, second, violates the double jeopardy clause by receiving multiple punishments for the same crime."[3]

I first turn to the general principles that guide my analysis of the court's lack of jurisdiction to hear the defendant's motion. At common law, once a court renders a judgment of conviction and sentences a defendant, the court loses jurisdiction over the defendant and the sentence, unless the court expressly has been authorized to act. *State* v. *Lawrence*, 281 Conn. 147, 154, 913 A.2d 428 (2007). We know, as well, that there is no legislative or constitutional grant of continuing jurisdiction to give the trial court power to correct a sentence. Id. Finally, we know that there is, however, a common-law exception to this rule, which permits a court, at any time, to correct an illegal sentence. Id., 154–55. Practice Book § 43-22 is the embodiment of that common-law exception. It provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."[4] Practice Book § 43-22.

It is axiomatic in Connecticut jurisprudence that "Practice Book rules do not ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings . . . . Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts." (Internal quotation marks omitted.) *State* v. *Lawrence*, supra, 281 Conn. 155. Thus, "[b]ecause the judiciary cannot confer jurisdiction on itself through its own rule-making power, [Practice Book] § 43-22 is limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and its execution has begun. . . . Therefore, for the trial court to have jurisdiction to consider the defendant's claim of an illegal sentence, the claim must fall into one of the categories of claims that, under the common law, the court has jurisdiction to review." (Citation omitted.) Id.

Our decisional law teaches that there are four categories of claims cognizable under Practice Book § 43-22. "[A]n illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . In accordance with this summary, Connecticut courts have considered four categories of claims pursuant to § 43-22. The first

category has addressed whether the sentence was within the permissible range for the crimes charged. . . . The second category has considered violations of the prohibition against double jeopardy. . . . The third category has involved claims pertaining to the computation of the length of the sentence and the question of consecutive or concurrent prison time. . . . The fourth category has involved questions as to which sentencing statute was applicable." (Citations omitted; internal quotation marks omitted.) Id., 156–57.[5]

From my review of decisional law on this topic, it is apparent that confusion abounds on the question of the jurisdiction of the trial court to hear a motion to correct an illegal sentence. On one hand, there is a stream of cases which hold that the focus of a motion to correct an illegal sentence must be on the sentencing procedure and not on the trial proceedings. But, there is also a countercurrent of cases which appear to suggest that a motion to correct an illegal sentence may properly be utilized to correct dual convictions for single offenses. The disarray is palpable from the number of reversals by this court on the basis of our determination, on review, that the trial court either incorrectly determined it had no jurisdiction when it did, or it exercised jurisdiction when it was lacking.[6] My colleagues in the majority have not righted the ship. Thus, our course in this jurisprudence remains aimless, lending confusion and uncertainty to litigants and the trial bench as well. It is high time to find the proper course.

We and our Supreme Court, have opined that a motion to correct an illegal sentence must focus on the sentencing proceedings, and may not be used as a collateral attack on one's conviction. In *State* v. *Mollo*, 63 Conn. App. 487, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001), we affirmed the trial court's decision holding that Practice Book § 43-22 does not authorize the trial court to vacate a conviction. In *Mollo*, we concluded: "The defendant does not claim that the court imposed the sentence in an illegal manner but, rather, that the concept of illegal sentence under Practice Book § 43-22 includes any sentence based on a voidable conviction. We do not agree." (Internal quotation marks omitted.) Id., 491. In *State* v. *Koslik*, 116 Conn. App. 693, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009), we expressly followed *Mollo* and observed: "Our Supreme Court has concluded that to invoke successfully the court's jurisdiction with respect to a claim of an illegal sentence, the focus cannot be on what occurred during the underlying conviction. . . . In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack." (Citations omitted; internal quotation marks omitted.) Id., 699.

Later, in *State* v. *Smith*, 150 Conn. App. 623, 92 A.3d 975, cert. denied, 314 Conn. 904, 99 A.3d 1169 (2014), we reaffirmed our view of the narrow scope of Practice Book § 43-22 in our statement that: "The purpose of . . . [Practice Book] § 43-22 is not to attack the validity of a conviction by setting it aside but, rather to correct an illegal sentence or disposition, or one imposed or made in an illegal manner." (Internal quotation marks omitted.) Id., 635; accord *State* v. *Starks*, 121 Conn. App. 581, 591–92, 997 A.2d 546 (2010). The same point was made, again, in a slightly different manner in *State* v. *Saunders*, 132 Conn. App. 268, 270, 50 A.3d 321 (2011), cert. denied, 303 Conn. 924, 34 A.3d 394 (2012); accord *State* v. *Parker*, 295 Conn. 825, 835, 992 A.2d 1103 (2010). In *State* v. *Saunders*, supra, 132 Conn. App. 271, we restated language found in *Mollo* that "the relief allowed by . . . [Practice Book] § 43-22 . . . require[s], as a precondition, a valid conviction." (Internal quotation marks omitted.)

We have held, as well, that the fact that the defendant frames his motion as an attack on his sentence, if, in reality, his focus is on his underlying conviction, the court will not have jurisdiction pursuant to Practice Book § 43-22. *State* v. *Wright*, 107 Conn. App. 152, 944 A.2d 991, cert. denied, 289 Conn. 933, 958 A.2d 1247 (2008). In *Wright*, a case with significant parallels to the case at hand, a panel of this court found that the trial court had no jurisdiction even though the defendant assailed his sentence as a violation of his protection against double jeopardy. Id., 157–58. There, the defendant filed a motion to correct an illegal sentence approximately three and one-half years after his sentencing, in which he claimed that his sentence violated his constitutional protection against double jeopardy. Id., 154–56. A panel of this court agreed with the trial court's dismissal on jurisdictional grounds. In its opinion, the panel observed: "The defendant claims that the court had jurisdiction to correct his sentence because it violated his constitutional protection against double jeopardy. Specifically, he argues that he could not be convicted as an accessory to murder because the information did not include an accessorial liability charge. He claims that the polling of the jurors demonstrated that he was 'acquitted' as being the principal in the crime. For that reason, he argues that the sentence imposed for his conviction as an accessory to murder violates the prohibition against double jeopardy." (Footnote omitted.) Id., 155. In concluding that the trial court had correctly determined it had no jurisdiction, the panel in *Wright* observed: "In the present case, the defendant's claim, by its very nature, presupposes an invalid conviction. The defendant does not claim that the sentence he received exceeded the maximum statutory limits prescribed for the crime for which he was convicted. He also does not claim that he was denied due process at his sentencing hearing or that his sen-

tence is ambiguous or internally contradictory. If the defendant's claim were to fall into any of those categories, Practice Book § 43-22 would be the proper vehicle by which he could invoke the trial court's jurisdiction. Because the defendant's claim falls outside that set of narrow circumstances in which the court retains jurisdiction over a defendant once that defendant has been transferred into the custody of the commissioner of correction to begin serving his sentence, the court lacks jurisdiction to consider the claim pursuant to a motion to correct an illegal sentence under Practice Book § 43-22. . . .

"We conclude that the defendant's claim that his sentence is illegal because it violates his constitutional protection against double jeopardy is actually a claim of an improper conviction, which is, in reality, a collateral attack on his conviction and does not fall within the purview of Practice Book § 43-22." (Citation omitted; footnote omitted.) Id., 157.

In *State* v. *Starks*, supra, 121 Conn. App. 590, this court expressly followed *Wright* in holding that, notwithstanding a defendant's nominal attack on his sentence, where his claim is, in reality, an attack on his conviction, the court lacks jurisdiction under Practice Book § 43-22 to hear the motion. There, we stated: "Our Supreme Court has concluded that to invoke successfully the court's jurisdiction with respect to a claim of an illegal sentence, the focus cannot be on what occurred during the underlying conviction. . . . In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack." (Internal quotation marks omitted.) Id. The court in *Starks* concluded: "Insofar as this portion of the defendant's motion to correct constituted a collateral attack on his conviction and, thus, was outside of the court's jurisdiction, the court should have dismissed, rather than denied, this portion of the motion. See, e.g., *State* v. *Wright*, [supra, 107 Conn. App. 157–58]." *State* v. *Starks*, supra, 590.

Notwithstanding *Wright*, our subsequent express adherence to it, and the several cases in which we have held that a Practice Book § 43-22 motion may not be utilized as a vehicle to attack one's conviction, we appear to have sanctioned just that approach in *State* v. *Santiago*, 145 Conn. App. 374, 74 A.3d 571, cert. denied, 310 Conn. 942, 79 A.3d 893 (2013), a case which I am unable to distinguish from *Wright*. Both *Wright* and *Santiago* involve defendants who filed motions to correct illegal sentences on the basis of double jeopardy, but resulted in different outcomes on appeal. In *Wright*, the trial court dismissed the defendant's motion as a collateral attack on his conviction, over which the court had no continuing jurisdiction. We affirmed the

court's determination on appeal. *State* v. *Wright*, supra, 107 Conn. App. 158. In *Santiago*, the trial court also dismissed the defendant's motion for lack of jurisdiction, but on appeal, we reversed, ordering instead that the court deny the motion on the basis that the defendant had made a double jeopardy claim even though it, too, attacked his conviction. *State* v. *Santiago*, supra, 384. From my perspective *Wright* and *Santiago* cannot be harmonized.

To be sure, the defendant in *Santiago*, unlike the defendant in the case at hand who received concurrent sentences, alleged that the imposition of consecutive sentences on the two charges of which he was convicted, which arose out of the same incident, violated his rights against double jeopardy. Id., 377. In *Santiago*, we determined that the trial court did have jurisdiction over a motion to correct an illegal sentence because he had founded his claim on an allegation of double jeopardy, language which we apparently then thought adequate to confer jurisdiction. Id., 379–80. Having further reviewed the underpinnings to *Santiago*, I have concluded that it is inconsistent with our prior jurisprudence that a motion to correct an illegal sentence may not be used as a vehicle to attack one's conviction even if framed as an illegal sentence claim. Thus, I have concluded, with respect, that our decision in *Santiago* was incorrect and should not be followed.[7]

I believe that the holding in *Wright* is applicable to the case at hand. In opining that a motion to correct an illegal sentence may not be used as a vehicle to collaterally attack a sentence, the court in *Wright* stood on solid ground and within the parameters of its common law antecedents.

That said, *Santiago* does not represent the only crosscurrent to the view that a court, pursuant to a motion to correct an illegal sentence, may not affect a conviction. Rather, it finds some support in a few decisions in which Practice Book § 43-22 appears to have been legitimized as a vehicle to alter a conviction and not merely a sentence. In *State* v. *Cator*, 256 Conn. 785, 781 A.2d 285 (2001), the defendant had been convicted of murder, felony murder, conspiracy to commit murder, kidnapping in the second degree and conspiracy to commit kidnapping in the second degree. Id., 787–88. On direct appeal to our Supreme Court, the defendant claimed, inter alia, that his convictions and sentences for both murder and felony murder violated his right to the protection of double jeopardy as did his convictions for conspiracy to commit kidnapping and conspiracy to commit murder, because the murder and felony murder convictions were for the same act, and his two conspiracy convictions were supported by evidence of a single agreement to kidnap and murder the victim. Id., 803–808. In its opinion, our Supreme Court observed, with apparent approval, that, after trial, the trial court, pursu-

ant to the state's motion to correct an illegal sentence, had merged the defendant's convictions for murder and felony murder and imposed one sentence for the merged offenses. The court opined: "In this case, the trial court had jurisdiction to correct the defendant's sentences pursuant to Practice Book § 43-22 . . . . Both the trial court and this court, on appeal, have the power, at any time, to correct a sentence that is illegal." (Internal quotation marks omitted.) Id., 803–804.[8] The court in *Cator* stated, as well: "It is clear in this case that the trial court at first imposed an illegal sentence. That court retained jurisdiction to correct that sentence pursuant to Practice Book § 43-22. Accordingly, it was proper for the trial court to merge the convictions for murder and felony murder pursuant to [*State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991)]. Once this was done, the defendant's claim of double jeopardy became moot." *State* v. *Cator*, supra, 805.[9] This court later appears to have applied the reasoning of *Cator* to sanction the action of the trial court in vacating a conviction pursuant to § 43-22. In *State* v. *Brown*, 153 Conn. App. 507, 101 A.3d 375 (2014), cert. granted, 319 Conn. 901, 122 A.3d 636 (2015) (appeal withdrawn August 15, 2016), on direct appeal, we observed: "The defendant . . . claims that his conviction of certain charges violated his constitutional right against double jeopardy. In his reply brief and at oral argument before this court, however, the defendant subsequently withdrew certain aspects of this claim. He did so specifically because the state conceded that the failure to merge the conviction of conspiracy to commit larceny in the third degree with the conviction of conspiracy to commit burglary in the third degree violated principles of double jeopardy, and because the court later granted his motion to correct an illegal sentence and vacated without prejudice the conviction of one of the two conspiracy counts." Id., 532.

While recognizing the *Cator* line of cases, I do not believe the intent of the court, in these cases, was to open wide the door to attacks on convictions through the guise of a Practice Book § 43-22 motion, nominally assailing a sentence. To do so, as I believe, with respect, the majority now does, would vitiate the limited purpose of § 43-22, and unreasonably expand the court's postconviction jurisdiction beyond its common-law bounds. Nevertheless, I believe that the holdings of the cases cited herein, in toto, create currents and crosscurrents in need of calming by a higher power.

The majority holds that the trial court had jurisdiction over the defendant's claims in the case at hand because he claimed, as the basis of his motion, that his convictions and sentences violate the constitutional proscription against double jeopardy. As noted, however, we know that where a defendant only nominally attacks his sentence in order to attempt to fit a conviction claim

into the ambit of a Practice Book § 43-22 motion, a reviewing court will look to the substance and not the precise language of a defendant's motion to determine if it is, in fact, a sentencing issue. In this case at hand, however, as in *Santiago*, the majority appears to have credited the defendant's claim as a true sentencing claim even though, like *Wright*, it is an attack on his conviction.

In order to calm this jurisprudence, it is appropriate and useful to reflect on our Supreme Court's characterization of a motion to correct an illegal sentence. In *State* v. *Francis*, 322 Conn. 247, 259–60, 140 A.3d 927 (2016), the court opined: "A motion to correct an illegal sentence constitutes a narrow exception to the general rule that, once a defendant's sentence has begun, the authority of the sentencing court to modify that sentence terminates. . . . Indeed, [i]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding [itself] . . . must be the subject of the attack. . . . Therefore, the motion is directed to the sentencing court, which can entertain and resolve the challenge most expediently." (Internal quotation marks omitted.) While the court, in *Francis*, assessed whether appointed counsel in a motion to correct an illegal sentence should be required to write an *Anders* brief[10] in order to be relieved of further representation, in coming to the conclusion that counsel could be excused through a less rigorous process, the court characterized a motion for the correction of an illegal sentence in a manner instructive to our present analysis. There, the court opined: "In light of the limited and straightforward nature of the claims that may be raised in a motion to correct, the potential merits of such a motion frequently will be apparent to the court and appointed counsel from a simple review of the sentencing record. . . . Accordingly, we can perceive no reason why appointed counsel, having carefully reviewed the record for possible sentencing errors in light of the governing legal principles and determined that none exist, must then be required to file an *Anders* brief identifying anything in the record that might arguably support a countervailing view, or why the trial court should then be required to undertake a full and independent review of the record to determine whether it agrees with defense counsel's assessment of the defendant's claimed sentencing error." (Citations omitted.) Id., 265–66. And yet, to decide this defendant's claim on the merits, both the trial court and the majority on review, were required to do just that.

Unfortunately, the observations of the court in *Francis* regarding the narrow focus and expedited process of a motion to correct an illegal sentence do not reflect the course such motions have taken over the past several years. Rather, it appears that the filing of a motion to correct an illegal sentence has gained in practice as

courts on review have muddied the jurisdictional waters with a result that more and more defendants appear willing to give it a try, even though, in the main, the vast majority of them are ultimately unsuccessful.[11]

To be true to *Francis*, I believe, respectfully, we need to reset the parameters of a motion to correct an illegal sentence. If it is intended to be an expedited and limited review of the sentencing procedure, perhaps we should return to a time period in which such a motion must be filed. And, to harmonize the *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013), and *Miranda* line of cases; see footnote 9 of this dissenting opinion; perhaps it should be made clear that only when it is obvious from the criminal information and verdict that convictions violate the protection against double jeopardy that a court may vacate a conviction and resentence a defendant pursuant to Practice Book § 43-22 and that such remedial action can only be taken before a defendant has commenced serving his or her sentence.[12] In the absence of clarification, it is likely that an increasing number of defendants, in reliance on *Santiago*, this case, and the *Polanco-Miranda* cases will be filing motions to correct illegal sentences which are simply collateral attacks on convictions which could have been timely appealed.

Because I believe the majority has mistakenly followed *Santiago*, which veered from its antecedents, and because, I believe, this court has expanded the reach of *Polanco* and *Miranda* beyond their intended reach, I would affirm the trial court's dismissal.[13] Accordingly, I respectfully dissent.

[1] The majority asserts that "the defendant did not claim any error associated with his underlying convictions . . . ." This assertion is contradicted by the record. Indeed, in the concluding paragraph of the defendant's opening brief, he states: "For the same reasons articulated by our court and the Supreme Court, the defendant's conviction for two counts of robbery, second, violates the double jeopardy clause by receiving multiple punishments for the same crime. . . . As a result, the defendant respectfully requests that this court find that the trial court erred, that the robbery, second, statute simply provides alternate ways in which to commit the same crime and that his conviction and sentence violate the protections of the double jeopardy clause."

Additionally, it is noteworthy that the defendant's argument focuses entirely on whether his convictions for two counts of robbery in the second degree violated the prohibition against double jeopardy. Nowhere does he make a claim that his concurrent sentences or the sentencing proceedings, themselves, violated his double jeopardy rights. Rather, he attacks the trial proceedings. As a consequence, in order to review the defendant's claim, on the merits, the trial court and the majority on appeal were required to examine the trial record and preconviction proceedings, an examination beyond the scope of the court hearing a motion to correct an illegal sentence.

[2] Interestingly, counsel did not suggest, in this sound basis analysis, which of the convictions should be vacated. Presumably the court could, if it found jurisdiction and merit to the defendant's quest, simply pick one of the convictions at random and its attendant sentence, leaving the other in place, an outcome beyond the court's authority and, in my view, a legally absurd proposition.

[3] In characterizing the sentencing as the trigger for a double jeopardy claim, counsel conflated sentencing with conviction and, doing so, ignored the basic law that if the defendant was, in fact, twice convicted for one offense, the convictions themselves constitute punishment in violation of the protection against double jeopardy. Thus, apart from any sentencing

issue, the defendant could have directly appealed from his convictions on the basis of double jeopardy. See *Rutledge* v. *United States*, 517 U.S. 292, 116 S. Ct. 1241, 134 L. Ed. 2d 419 (1996); *State* v. *Cator*, 256 Conn. 785, 781 A.2d 285 (2001). He now apparently seeks, through collateral attack, to do that which he did not do on direct appeal. In doing so, counsel for the defendant acknowledged her belief that she now is required to file a motion to correct an illegal sentence as a precondition to later filing a habeas petition attacking the conviction on ineffectiveness grounds. See *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 39, 779 A.2d 80 (2001) ("[w]e . . . conclude that, in order to challenge an illegal sentence, a defendant either must appeal the sentence directly or file a motion to correct the sentence pursuant to [Practice Book] § 43-22 with the trial court before raising a challenge for the first time in a petition for a writ of habeas corpus"). Query whether the rule of *Cobham* applies to require a defendant to file a motion nominally attacking a sentence as illegal but which is, in fact, only a collateral attack on one's convictions.

[4] Practice Book § 43-22 has an interesting pedigree. The rule's predecessor, Practice Book (1982) § 935, had provided: "The judicial authority who sentenced the defendant may, within ninety days, correct an illegal sentence or other illegal disposition, or he may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." In December, 1982, on the recommendation of then Superior Court Judge Frank Kinney, the rules committee of the Superior Court amended the rule to its present form. The transmittal regarding Judge Kinney's recommendation stated: "Judge Kinney suggests that we adopt a rule permitting the correction of an illegal sentence at any time instead of the 90 day limitation." Memorandum to Carl Testo from Frank Buonocore (December 15, 1982) (copy contained in the file of this case in the Appellate Court clerk's office).

The transmittal also makes reference to our Supreme Court's opinion in *State* v. *Pina*, 185 Conn. 473, 477–78, 440 A.2d 962 (1981), in which the trial court had sentenced the defendant to periods of incarceration for the commission of two crimes, but did not specify whether the terms were to run consecutively or concurrently. Discovering this omission, the state moved to correct the illegal sentence more than ninety days after its imposition. Id., 482 n.7. After the trial court responded by specifying that the sentences were to be served consecutively, the defendant appealed on the basis of double jeopardy. Id., 477–78. Our Supreme Court rejected the defendant's double jeopardy argument on the ground that the constitutional protections against double jeopardy are not as rigorous regarding sentencing as they are regarding convictions. The court set aside the judgment, nevertheless, on the ground that because the state's motion had been filed more than ninety days after the date of sentencing, the trial court was without power to act. Id., 482. From this chain of events, all we can conclude is that the time limit for filing a motion to correct an illegal sentence was removed from the rule of practice in 1982.

[5] As noted, an illegal sentence includes a sentence that violates a defendant's right to protection from double jeopardy. In my view, the reference to double jeopardy is tied to the sentence and not to the underlying conviction. If not, then the jurisprudence stating that a Practice Book § 43-22 motion presumes a valid conviction has no meaning. The majority's view that one may legitimately utilize this rule of practice as a vehicle to attack multiple convictions as violating the protection against double jeopardy represents an unwarranted expansion of the scope of this rule beyond its common-law basis. As noted by several cases cited herein, the focus of the court when confronted with a § 43-22 motion must be on the sentencing and not on the underlying conviction. The majority appears to have the view that double jeopardy claims are in a separate category and that a defendant may utilize § 43-22 to attack both convictions and sentencings which are claimed to violate double jeopardy protections. While I agree that the *State* v. *Cator*, supra, 256 Conn. 785, *State* v. *Chicano*, 216 Conn. 699, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991), overruled in part by *State* v. *Polanco*, 308 Conn. 242, 248, 261, 61 A.3d 1084 (2013), and the *State* v. *Polanco*, 308 Conn. 242, 61 A.3d 1084 (2013), line of cases appear to suggest that a court, pursuant to § 43-22, may vacate a conviction, I cannot harmonize those cases with our Supreme Court's view of § 43-22, as expressed in *State* v. *Francis*, 322 Conn. 247, 140 A.3d 927 (2016), and *State* v. *Lawrence*, supra, 281 Conn. 147.

In my view, Practice Book § 43-22, to be true to its origins, is available only to correct an illegal sentence. And, indeed, our jurisprudence reflects a range of sentencing-only double jeopardy claims that fall within the ambit

of § 43-22.

For example, in *State* v. *Tabone*, 279 Conn. 527, 902 A.2d 1058 (2006), the defendant argued that his sentence was illegal under two separate grounds: 1. the sentence exceeded the maximum statutory punishment; and 2. the sentence violated double jeopardy. In his second claim, the defendant argued in the trial court and on appeal that his sentence violated his protection against double jeopardy because it "constitutes cumulative multiple punishments exceeding what the legislature intended . . . ." (Internal quotation marks omitted.) Id., 532. In deciding the defendant's first claim, our Supreme Court held that a sentence of ten years of imprisonment and ten years of special parole exceeds the maximum statutory limit for the offense of sexual assault in the second degree. Id., 533. Although the court did not reach the defendant's double jeopardy claim; id., 544 n.7; the case is an apt demonstration of a colorable double jeopardy claim as it relates only to sentencing.

Similarly, in *State* v. *Baker*, 168 Conn. App. 19, 145 A.3d 955, cert. denied, 323 Conn. 932, 150 A.3d 232 (2016), the defendant asserted a colorable, although unsuccessful, double jeopardy claim focused solely on punishment when he asserted that the sentence he received upon being convicted for the possession of a weapon or dangerous instrument in a correctional facility amounted to a double punishment in light of the administrative punishment he had received from the Department of Correction for the same behavior.

Additionally, in *Steve* v. *Commissioner of Correction*, 39 Conn. App. 455, 665 A.2d 168, cert. denied, 235 Conn. 929, 667 A.2d 555 (1995), this court followed federal precedent in holding that "time served on [a] vacated sentence must be treated and credited as postconviction confinement. To fail to do so would be a violation of the fifth amendment guarantee against double jeopardy." Id., 463. In so holding, we followed the United States Supreme Court's decision in *North Carolina* v. *Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), overruled in part by *Alabama* v. *Smith*, 490 U.S. 794, 798–99, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989), which addressed a sentencing-only double jeopardy claim. There, the defendant was convicted of assault with the intent to commit rape, a conviction that was later reversed, and, upon retrial, the defendant was convicted and resentenced. At the time of his resentencing, the defendant had already served six and one-half years of incarceration on his original conviction, onto which the court added the new sentence. The defendant argued that this violated his protection against double jeopardy and the Supreme Court agreed, holding that "the constitutional guarantee against multiple punishments for the same offense absolutely requires that punishment already exacted must be fully credited in imposing sentence upon a new conviction for the same offense. If, upon a new trial, the defendant is acquitted, there is no way the years he spent in prison can be returned to him. But if he is reconvicted, those years can and must be returned—by subtracting them from whatever new sentence is imposed." (Footnote omitted; internal quotation marks omitted.) Id., 718–19.

A number of state court decisions, in addition to *Steve*, have followed the *Pearce* reasoning in the resentencing context. For example, in *State* v. *Taparra*, 82 Haw. App. 83, 919 P.2d 995 (1996), the Intermediate Court of Appeals of Hawaii, applying *Pearce*, held that the defendant, upon resentencing, must be credited for the days he had already served in prison, the portion of the fine he had already paid, and the community service hours he had already served. Id., 89.

In *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 21 L. Ed. 872 (1873), the United States Supreme Court addressed another type of sentencing-only double jeopardy claim. There, a defendant was convicted of stealing federal mail bags, a crime which carried a punishment of *either* imprisonment *or* a fine. The defendant, however, was sentenced to *both* imprisonment *and* a fine. The United States Supreme Court held that subjecting the defendant to both punishments violated double jeopardy. Id., 176. The *Ex parte Lange* holding sparked over a century's worth of cases nationwide, which highlight the fact that a defendant very well may bring a double jeopardy claim challenging only his sentence, independent from his conviction. For instance, in *United States* v. *Versaglio*, 85 F.3d 943 (2d Cir.), modified after reh. on other grounds, 96 F.3d 637 (2d Cir. 1996), the defendant was convicted of criminal contempt and sentenced, like the defendant in *Ex parte Lange*, to pay a fine *and* to a term of imprisonment. He argued that, statutorily, he could only be sentenced to one or the other and, since he had already paid his fine, the prison sentence should be vacated. Id., 945. The United States Court of Appeals for the Second Circuit Court, relying on *Ex parte Lange* and its progeny, agreed with the defendant and stated "the rule of *Lange* . . . [precludes]

imposition of the alternative punishment of imprisonment." Id., 948.

The Nevada Supreme Court reaffirmed its commitment to the *Ex parte Lange* line of reasoning in 2007 in *Wilson* v. *State*, 123 Nev. 587, 594, 170 P.3d 975 (2007). There, the defendant was convicted of four counts of production of child pornography and four counts of possession of child pornography. On direct appeal, the court reversed three of the four production convictions as violative of double jeopardy and remanded the case for resentencing. Thereafter, the defendant was resentenced and the court increased his sentences for the possession convictions, and changed the sentences from running concurrently to running consecutively. The Nevada Supreme Court held that the court's "resentencing on the lawful portions of [the defendant's] conviction surviving direct appeal violated [the defendant's] rights against double jeopardy." Id., 597.

Courts have also addressed claims in which defendants argue that their double jeopardy rights had been violated by courts adding requirements to their sentence after they were released from custody or probation. See *State* v. *Schubert*, 212 N.J. 295, 53 A.3d 1210 (2012), wherein the New Jersey Supreme Court held that the trial court's action in amending its judgment to add a requirement of community supervision for life after the defendant had been discharged from probation violated the defendant's double jeopardy rights. Id., 316; see also *People* v. *Williams*, 14 N.Y.3d 198, 925 N.E.2d 878, 899 N.Y.S.2d 76, cert. denied, 562 U.S. 947, 131 S. Ct. 125, 178 L. Ed. 2d 242 (2010), wherein the New York Court of Appeals held that defendants who had been released from prison before resentencing proceedings were commenced had a legitimate expectation of finality of their originally imposed sentences and, thus, to impose previously omitted terms of postrelease supervision at resentencing violated their double jeopardy rights. Id., 217.

[6] In the following cases, this court, on review, reversed the trial court either for deciding a matter on the merits when we determined it did not have the jurisdiction to do so, or we reversed the trial court for having dismissed a motion for want of jurisdiction where we determined that the court, in fact, had jurisdiction: *State* v. *McClean*, 173 Conn. App. 62, A.3d (2017) (trial court dismissed motion to correct illegal sentence for lack of jurisdiction, on appeal, court determined there was jurisdiction; on remand from our Supreme Court, this court affirmed original dismissal for lack of jurisdiction); *State* v. *Williams-Bey*, 173 Conn. App. 64, A.3d (trial court dismissed motion to correct illegal sentence for lack of jurisdiction, on appeal, court determined there was jurisdiction; on remand from our Supreme Court, this court affirmed original dismissal for lack of jurisdiction), cert. granted on other grounds, 326 Conn. 920, A.3d (2017); *State* v. *Abraham*, 152 Conn. App. 709, 99 A.3d 1258 (2014) (trial court incorrectly dismissed motion to correct for lack of jurisdiction); *State* v. *Meikle*, 146 Conn. App. 660, 79 A.3d 129 (2013) (trial court incorrectly exercised jurisdiction in denying motion to correct); *State* v. *St. Louis*, 146 Conn. App. 461, 76 A.3d 753 (trial court incorrectly exercised jurisdiction in denying motion to correct), cert. denied, 310 Conn. 961, 82 A.3d 628 (2013); *State* v. *Santiago*, 145 Conn. App. 374, 74 A.3d 571 (trial court incorrectly dismissed motion for lack of jurisdiction), cert. denied, 310 Conn. 942, 79 A.3d 893 (2013); *State* v. *Clark*, 136 Conn. App. 421, 47 A.3d 391 (trial court incorrectly exercised jurisdiction in denying motion to correct), cert. denied, 307 Conn. 906, 53 A.3d 221 (2012); *State* v. *Henderson*, 130 Conn. App. 435, 24 A.3d 35 (2011) (trial court incorrectly dismissed motion for lack of jurisdiction), appeals dismissed, 308 Conn. 702, 66 A.3d 847 (2013); *State* v. *Osuch*, 124 Conn. App. 572, 5 A.3d 976 (trial court incorrectly dismissed motion for lack of jurisdiction), cert. denied, 299 Conn. 918, 10 A.3d 1052 (2010); *State* v. *Starks*, 121 Conn. App. 581, 997 A.2d 546 (2010) (trial court incorrectly exercised jurisdiction in denying portion of motion to correct); *State* v. *Delgado*, 116 Conn. App. 434, 975 A.2d 736 (2009) (trial court incorrectly exercised jurisdiction in denying motion to correct); *State* v. *Taylor*, 91 Conn. App. 788, 882 A.2d 682 (trial court incorrectly exercised jurisdiction in denying motion to correct), cert. denied, 276 Conn. 928, 889 A.2d 819 (2005); *State* v. *Francis*, 69 Conn. App. 378, 793 A.2d 1224 (trial court incorrectly exercised jurisdiction in denying motion to correct), cert. denied, 260 Conn. 935, 802 A.2d 88, cert. denied, 537 U.S. 1056, 123 S. Ct. 630, 154 L. Ed. 2d 536 (2002).

[7] I am aware, of course, of the stated policy of this court that one panel will not overturn the decision of a prior panel. See *Consiglio* v. *Transamerica Ins. Group*, 55 Conn. App. 134, 138 n.2, 737 A.2d 969 (1999) ("[T]his court's policy dictates that one panel should not, on its own, reverse the

ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc."). Whatever the source of that policy, it has not been enshrined in a discrete rule of practice and has become a rule of thumb only by practice. That said, I do not dispute that following this policy enhances collegiality on the court as well as confidence in the reliability and consistency of the Appellate Court generally. In the rare circumstance in which both panels in the original and subsequent appeals are comprised of the same judges, however, I believe we could revisit our earlier opinion if we thought doing so would serve justice, as we would then only be reviewing our own work. In *Chung* v. *Commissioner of Correction*, 245 Conn. 423, 434 n.7, 717 A.2d 111 (1998), the late Justice David M. Borden, in disavowing a prior opinion he had authored, quoted Justice Robert Jackson who, in a somewhat parallel circumstance, opined: "Precedent, however, is not lacking for ways by which a judge may recede from a prior opinion that has proven untenable and perhaps misled others." (Internal quotation marks omitted.) Having gained time for reflection, if not wisdom, I now believe that we erroneously misled the bench and bar in *Santiago* and, in this instance, remorse begs correction either by this panel or on the next rung of Connecticut's judicial ladder.

[8] Since *Cator*, the availability of an attack on one's sentence on direct appeal appears to have narrowed. In *State* v. *Urbanowski*, 163 Conn. App. 377, 384–85, 136 A.3d 236, cert. granted, 321 Conn. 905, 138 A.3d 280 (2016), this court held that, where a defendant had not sought to correct an illegal sentence by filing a Practice Book § 43-22 motion in the trial court, it is inappropriate to raise an illegal sentence claim for the first time on direct appeal. Also, in the context of a habeas corpus petition, our Supreme Court has held that a petitioner who attacks his sentence or disposition as illegal, and who did not first file a motion to correct an illegal sentence, may be procedurally defaulted from later raising such a claim in a habeas petition. *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 197–99, 982 A.2d 620 (2009). One can only speculate as to whether the holdings in *Urbanowski* and *Crawford* have contributed to the surge of Practice Book § 43-22 motions. In the case at hand, counsel conceded her belief that she was required to file such a motion in the trial court in order to preserve her client's later habeas opportunity. To me, such confusion makes it abundantly clear that the court needs to clearly explicate the difference between a sentencing claim and a conviction claim in the context of Practice Book § 43-22 and, if the two can be intertwined, the limited circumstances in which that may be permitted.

[9] *Cator* appears to have derived its pedigree from *Chicano*, in which our Supreme Court opined that when a defendant is convicted of both a lesser and greater offense, the proper course for the court is to merge the convictions into one. *State* v. *Chicano*, supra, 216 Conn. 725. More recently, our Supreme Court has reversed that jurisprudence and now holds that the proper course, in such a situation, is for the court to vacate the lesser conviction and sentence on the conviction for the greater offense. *State* v. *Polanco*, supra, 308 Conn. 245. Later, the rule of *Polanco* was expanded to include situations involving cumulative convictions for the same offense. See *State* v. *Miranda*, 317 Conn. 741, 755–56, 120 A.3d 490 (2015).

In this line of cases, it appears, from *Cator*, that the trial court has jurisdiction to take such remedial action pursuant to Practice Book § 43-22, notwithstanding that adherence to our Supreme Court in this regard would appear to expand the jurisdiction of the trial court in a Practice Book § 43-22 circumstance to permit the court to affect both a conviction and an attendant sentence.

[10] "In *Anders* [v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967)], the United States Supreme Court outlined a procedure that is constitutionally required when, on direct appeal, appointed counsel concludes that an indigent defendant's case is wholly frivolous and wishes to withdraw from representation. . . . Under *Anders*, before appointed counsel may withdraw, he or she must provide the court and the defendant with a brief outlining anything in the record that may support the appeal, and the defendant must be given time to raise any additional relevant points. . . . Thereafter, the court, having conducted its own independent review of the entire record of the case, may allow counsel to withdraw, if it agrees with counsel's conclusion that the appeal is entirely without merit." (Citations omitted.) *State* v. *Francis*, supra, 322 Conn. 250 n.3.

[11] My research for the time period 2000 through the end of 2016 reveals that the number of Superior Court decisions on motions to correct illegal sentences has dramatically increased over the past nearly two decades, with

a substantial acceleration in the past few years. From 2000 through 2006, the numbers ranged from zero to three. From 2007 through 2012 the number of filings ranged from five to twelve, and from 2013 through 2016 the numbers ranged from five to twenty-four. Allowing for filings based upon the United States Supreme Court's juvenile justice decisions, the top number of that range would be reduced by eight such filings in 2016, the highest year.

And, finally, the record puts in doubt the notion advanced by the court in *Francis* that a motion to correct an illegal sentence should result in an expedited hearing before the original sentencing judge. *State* v. *Francis*, supra, 322 Conn. 259–60. Indeed, with respect to fifteen cases randomly surveyed, the time period between sentencing and the hearing on the motion to correct averaged 9.3 years, with a low of seven months and a high of sixteen years and, understandably, the judge who heard the motion to correct was the original sentencing judge in only one of those cases. Finally, it may be factually, if not legally, interesting to note in regard to the fifteen surveyed cases, that the defendants in fourteen of those cases were unsuccessful either on the merits or because the court lacked jurisdiction to hear the motion.

[12] This suggestion, if found sensible, could perhaps be accomplished by the creation of a rule that, after conviction but before imposition of sentence, either party may move to have a conviction vacated pursuant to either *State* v. *Polanco*, supra, 308 Conn. 242, or *State* v. *Miranda*, supra, 317 Conn. 741.

[13] At trial, the court initially dismissed the motion, not for want of jurisdiction but on the merits. The majority reverses only the form of the judgment. I would affirm the judgment not for the reason stated by the trial court but because the court had no jurisdiction. It is axiomatic that on appeal we may affirm a trial court on alternative grounds. See *Johnson* v. *Rell*, 119 Conn. App. 730, 736, 990 A.2d 354 (2010) (question of subject matter jurisdiction can be raised sua sponte by the court).

In the case at hand, after oral argument, we asked counsel to brief the question of whether the trial court had jurisdiction to hear the defendant's motion. The majority summarily concludes that both parties agree that the court had jurisdiction over the defendant's motion to correct. I think it is a fair observation that while both parties stated their belief that the court had jurisdiction, the state came to that conclusion on the basis of its belief that we are constrained by *Santiago*. It is noteworthy that the state, nevertheless, offered its view that this jurisprudence may be incorrect and, accordingly, the state reserved its right to argue the question of jurisdiction should this opinion be reviewed by the Supreme Court. In brief, and after reviewing our jurisprudence in this regard, the state commented: "Notwithstanding Connecticut jurisprudence suggesting that true double jeopardy claims may be raised via a motion to correct an illegal sentence, that conclusion may be misguided given the multifaceted nature of double jeopardy claims, which come in various forms and can arise at various points in a prosecution. As such, double jeopardy claims cannot be considered as purely relating to sentencing." Thus, I believe it would be more accurate to conclude that the state feels constrained by our somewhat confusing jurisprudence on this issue and not that the state embraces it as a correct understanding of the parameters of Practice Book § 43-22.